MICHAEL L. FRADIN (SBN 0091739)
*mike@fradinlaw.com*
LAW OFFICE OF MICHAEL L. FRADIN
8401 Crawford Ave. Ste. 104
Skokie, IL 60076
Telephone: 847/986-5889
Facsimile: 847/673-1228

BRIAN D. CHASE (*pro hac vice pending*)
bchase@bisnarchase.com
JERUSALEM F. BELIGAN (*pro hac vice pending*)
jbeligan@bisnarchase.com
BISNAR|CHASE LLP
1301 Dove Street, Suite 120
Newport Beach, California 92660
Telephone:  949/752-2999
Facsimile:  949/752-2777

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

GABRIEL RODRIGUEZ, and
SARAH GIESMAN,

          Plaintiffs,

*v.*

LIFE TIME FITNESS, INC., a
Minnesota corporation; LTF CLUB
MANAGEMENT COMPANY,
LLC, a Delaware Limited Liability
Company; and LTF CLUB
OPERATIONS COMPANY, INC.,
a Minnesota corporation; and
DOES 1 to 10, inclusive,

          Defendant,

Case No. ----------

**COMPLAINT FOR VIOLATIONS OF:**

1. **The Fair Labor Standards Act (29 U.S.C. §§ 201-219, C.F.R. § 531.35)f;**
2. **FRCP 23 Class Action (State-Law Claims):**
   a. **Article II, § 34a of the Ohio Constitution**
   b. **Ohio Revised Code Chapter 4111: Ohio Minimum Fair Wage Standards Act**

**DEMAND FOR JURY TRIAL**

Judge -------
Magistrate Judge ------

## I. Preliminary Statement

1. Plaintiffs Gabriel Rodriguez ("Rodriguez) and Sarah Giesman ("Giesman") (collectively "Plaintiffs"), by and through their undersigned attorneys, bring this action on behalf of themselves and all others similarly situated, based upon personal knowledge as to themselves and their activities, and on information and belief as to all other matters, against defendants Life Time Fitness, Inc., LTF Club Management Company, LLC and LTF Club Operations Company, Inc. (collectively, "Life Time" or "Defendants"), and alleges as follows:

## II. Introduction

2. Plaintiffs bring this case against Life Time for willfully violating the Fair Labor Standards Act ("FLSA") and Ohio labor laws. Plaintiffs bring the FLSA as a collective action to seek past-due wages and an equivalent amount in liquidated damages for putative class members who opt-in. Plaintiffs also bring supplemental Ohio claims to recover broader remedies unavailable in FLSA actions and will seek to certify those state-law claims pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"). It is well-settled that Rule 23 class actions can be combined (i.e., coexist) with collective actions brought under the FLSA. *Ervin v. OS Restaurant Services, Inc.*, 632 F.3d 971, 973-79 (7th Cir. 2011).

## III. Jurisdiction and Venue

3. This Court has federal question jurisdiction over Plaintiffs' FLSA claims, which arise under 29 U.S.C. § 216(b), pursuant to 28 U.S.C. §§ 1331. In addition, this Court has supplemental jurisdiction over Plaintiffs' state-law claims because those claims derive from the same common conduct that led to violations of the FLSA; that is, the FLSA and Ohio claims all derive from the same common nucleus of operative facts. 28 U.S.C. § 1367.

4. This Court has supplemental jurisdiction over Plaintiff's Ohio Constitutional and state law claims pursuant to 28 U.S.C. § 1367.

5.   Venue is proper in this judicial district because the facts and events giving rise to Plaintiffs' claims occurred in this judicial district. 28 U.S.C. §1391.

6.   Pursuant to Local Rule 3.8(a), this action is properly assigned to the Eastern Division of this Court.

## IV.   **The Parties**

### A. Plaintiffs

7.   Plaintiff Gabriel Rodriguez is a resident of Ohio and was employed by Defendant Life Time in Dublin, Ohio as a Personal Trainer from about March 2007 until about October 2016.

8.   Plaintiff Sarah Giesman is a resident of Ohio and was employed by Defendant Life Time in Dublin, Ohio as a Personal Trainer from about January 2016 until about March 2017.

### B. The Plaintiffs in General

9.   Plaintiffs will serve as adequate, typical and active participant and class representatives for the proposed FLSA Class, and under Rule 23. Plaintiffs share the same title, duties, and were affected by Life Time's illegal wage practices. Life Time has actual and constructive knowledge that Plaintiffs were performing work—every day and every workweek—for which they were not paid the minimum wage. Life Time has actual and constructive knowledge that Plaintiffs were working more than 8 hours a day, more than 40 hours a week—every workweek— but was not paid one and a half times their regular rate of pay. Life Time has actual and constructive knowledge that Plaintiffs were required to work off the clock and perform activities in which they were not paid a wage. Life Time has actual and constructive knowledge that due to its uniform and systematic practice of unlawfully deducting business losses and other business costs from Plaintiffs' wages, Plaintiffs' hourly rates were so diluted that they were paid less than the federal and state minimum wage.

10.     Plaintiffs have consented to sue for violations of the FLSA pursuant to 29 U.S.C. §§ 216(b) and 256. Consent to Join Forms for Plaintiffs are attached hereto as exhibits.

**C. Defendants**

11.     Life Time Fitness, Inc. is a Minnesota corporation. LTF Club Management Company, LLC is a Delaware Limited Liability Company. LTF Club Operations Company, Inc. is also a Minnesota corporation. Defendants' corporate headquarter is located in Chanhassen, Minnesota. Defendant Life Time owns and operates fitness centers throughout the United States and employed Plaintiffs and thousands of other Personal Trainers.

12.     The true names and capacities, whether individual, corporate, associate or otherwise, of defendants DOES 1 through 10 are unknown to Plaintiffs, who therefore sue these defendants by fictitious names. Plaintiffs further allege that each of these fictitious defendants is in some manner responsible for the acts and occurrences herein set forth. Plaintiffs will amend this Complaint to show these defendants' true names and capacities when ascertained, as well as the manner in which each fictitious defendant is responsible.

**V.     Factual Allegations**

**A. Life Time**

13.     Defendant Life Time employs Personal Trainers in over 106 fitness centers throughout the United States. Life Time Fitness touts itself to be "The Healthy Way of Life Company," dedicated to helping customers achieve their total health aspirations, athletic aspirations, and fitness goals. Life Time has become one of America's fastest growing fitness centers. Life Time, however, achieved this success by intentionally engaging in deceitful schemes to either not pay Personal Trainers for work performed, or deduct business losses and shortages from their wages, resulting in Personal Trainers performing substantial work for which they were not paid.

**B. Life Time's Compensation Scheme, Failure to Maintain Accurate Records of All Hours Worked, and Impact of Failure to Maintain Records Required by the FLSA and State Law.**

14. According to the Incentive Compensation Plan given to employees, Defendant Life Time agrees to pay Personal Trainers "1.5 times the applicable minimum wage for every hour worked OR actual commissions earned, whichever is greater." However, to confuse Personal Trainers and make it difficult for them to determine whether they were being paid properly, Life Time did not keep accurate records of the Personal Trainers' regular hourly rate, overtime rate of pay, hours worked each workday or workweek, all deductions made from their gross wages, and the settlement periods used to allocate the commissions over pre-determined periods of time. *See e.g., Olson v. Superior Pontiac-GMC, Inc.*, 765 F.2d 1570 (11th Cir. 1985). These records are critical for an employer's "failure to keep accurate records can obscure a multitude of minimum wage and overtime violations." *See Wirtz v. Mississippi Publishers Corp.*, 364 F.2d 603 (5th Cir. 1966). This is exactly what happened in this case. Life Time intentionally engaged in a uniform practice of not recording hours worked or notifying Personal Trainers of their regular rate of pay to obscure the payment of minimum and overtime wages. Indeed, Personal Trainers could not and cannot determine whether they are being paid correctly.

15. Defendant Life Time also employs an illegal scheme of deducting business losses, uniforms, shortages (due to client refunds or cancellations), and prior earned wages paid from the Personal Trainers' wages in order to pass on business losses, shortages, uniform costs, and prior earned wages to Personal Trainers. By deducting these business losses, shortages, uniform costs, and prior earned wages from the Personal Trainers' wages, Life Time Fitness increased its profits, but diluted the Personal Trainers' wages, resulting in the nonpayment of the minimum wage and the

violation of Article II, §34a of the Ohio Constitution and the Ohio Minimum Fair Wage Standards Act ("MFWSA"), Oh. Rev. Code, Chapter 4111.

16. Defendant Life Time's failure to maintain accurate time records results in a presumption against Life Time that the records, if produced, would support Plaintiffs' claim that wages are owed. *Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58 (2d Cir. 1997). In addition, in the absence of records, anecdotal evidence by Personal Trainers estimating the time they spent working is admissible to establish how many hours the employees worked. *Reich v. Waldbaum Inc.*, 833 F. Supp. 1037 (S.D. N.Y. 1993), *rev'd on other grounds*, 52 F.3d 35 (2d Cir. 1995); *Mabee v. White Plains Publishing Co.*, 41 N.Y.S.2d 534 (N.Y. 1943). As explained by the Supreme Court, when an employer fails to keep adequate employment records, an employee makes a *prima facie* case under the FLSA if the employee produces "sufficient evidence to show the amount and extent of [his] work as a matter of just and reasonable inference." The employee's proof of work hours need not be precise as to the dates and hours worked, and can consist of estimates as to the amount of work performed. *Williams v. R.W. Cannon, Inc.*, 2009 WL 2834955 (S.D. Fla. 2009); *Hilton v. Executive Self Storage Associates, Inc.*, 2009 WL 1750121 (S.D. Tex. 2009). An employee's testimony, standing alone, will suffice to establish the amount of unpaid overtime worked, even if there is other evidence contradicting the employee's testimony. *Moon v. Technodent Nat., Inc.*, 2008 WL 2117053 (M.D. Fla. 2008); *Ochoa v. Alie Bros., Inc.*, 2007 WL 2781192 (M.D. Fla. 2007); *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327 (S.D. N.Y. 2005); *Turner v. Human Genome Science, Inc.*, 292 F. Supp. 2d 738 (D. Md. 2003); *Colindres v. QuietFlex Mfg.*, 427 F. Supp. 2d 737 (S.D. Tex. 2006). The burden "then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the Court may then award damages to the employee, even

though the result be only approximate." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946); *see Arias v. U.S. Service Industries*, 80 F.3d 509 (D.C. Cir. 1996); *Herman v. Harmelech*, 2000 WL 420839 (N.D. Ill. 2000).

17.     Plaintiffs can meet their burden of proof by establishing that a representative sample of the Personal Trainers performed work for which they were improperly compensated and by producing "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson, supra*, 328 U.S. 680; *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167 (9th Cir. 2014) ("Since *Dukes* and *Comcast* were issued, circuit courts including this one have consistently held that statistical sampling and representative testimony are acceptable ways to determine liability so long as the use of these techniques is not expanded into the realm of damages."); *Secretary of Labor v. DeSisto*, 929 F.2d 789 (1st Cir. 1991). There is no obligation to present the testimony of each employee covered by the claim. *Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58 (2d Cir. 1997). For instance, in one case a court upheld the use of a sample of 2.5% of all affected employees to determine back wages due the rest. *Reich, supra*, 121 F.3d 58. In another, the court accepted a simple questionnaire distributed to employees. *Fast v. Applebee's Intern., Inc.*, 2009 WL 2391775 (W.D. Mo. 2009). Accordingly, Plaintiffs here can use representative evidence to prove Life Time's liability and damages owed in one stroke.

**C. Life Time Did Not Pay Personal Trainers the Minimum Wage for Each and Every Hour of Work.**

18.     Defendant Life Time did not want to pay the minimum-wage draw to Personal Trainers because it was a cost to the business which affected profitability. Life Time held its department heads "personally liable" if Personal Trainers did not make sufficient commissions to meet the draw. Life Time instructed its department heads to have Personal Trainers clocked in only when they were "servicing" clients, regardless of the amount of time actually worked. Managers instructed and threatened

Personal Trainers not to incur draw because the draw would be deducted from the managers' wages. Thus, even though Personal Trainers were in the fitness centers under the control of Life Time performing work, they did not clock in. Personal Trainers who did take draw were instructed not to, and if they did not comply, they were fired.

19.    Plaintiffs were informed and believe that security cameras in the fitness center will show and prove the "off the clock" work. A simple cross-referencing of videos and payroll records will prove Personal Trainers worked "off the clock." Another key piece of evidence is emails sent or received by Personal Trainers during the workday. Plaintiffs request that Defendant Life Time (including its directors, officers, employees, or other agent of Defendants') preserve—and not destroy or alter—any document and other physical evidence relating to this Complaint, including any relevant videos and emails. Defendant Life Time is on notice of its uncompromising duty to preserve what they know or reasonably should know will be relevant in the pending lawsuit, even though no discovery request or order to preserve the evidence has yet been made. *See Wm. T. Thompson Co. v. General Nutrition Corp.*, 593 F.Supp. 1443, 1455 (C.D. Cal. 1984). Violation of this duty is "spoliation." *See e.g. In re Quintus Corp.*, 353 B.R. 77, 84 (Bankr. D. Del. 2006), quoting *Silvestri v. Gen'l Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001) ["The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to the anticipated litigation."]. Accordingly, Life Time must take every reasonable step to preserve this information until the final resolution of this litigation. If it does not, Plaintiffs will request the Court for an Order instructing the trier of fact that had the evidence been preserved, it would have benefitted Plaintiffs.

**D. Life Time Did Not Pay Personal Trainers Overtime for Work Performed in Excess of 40 Hours in a Workweek.**

20.     Personal Trainers were required to work more than 40 hours in a workweek performing, among other things, training clients, attending mandatory meetings, completing tutorials, quizzes, videos and certifications, training courses, and cleaning the equipment in the fitness centers. Personal Trainers, however, were never paid overtime. Personal Trainers were instructed that they could work more than 40-hours, but they could not be clocked in for more than 40-hours. Because Life Time did not want to pay the minimum-wage draw—let alone overtime— Personal Trainers were forced to perform these duties "off the clock." Personal Trainers were not paid overtime for any work in excess of 8 hours in a workday or 40 hours in a workweek.

**E. Life Time Knew or Should Have Known Personal Trainers Were Working Uncompensated Hours.**

21.     This pay system as designed by Life Time equates to nothing more than a "Ponzi" scheme which pitted managers against Personal Trainers. Life Time would use the wages of its managers to pay Personal Trainers when they do not meet their draw; in other words, Life Time was "robbing Peter to pay Paul." This explains why managers place pressure on Personal Trainers to work off the clock since their own paychecks would be garnished if Personal Trainers did not meet their draw pay.

22.     Moreover, Life Time required and expected Personal Trainers to market its services and products via email or cold calls, to complete paperwork and reports, client files, clean fitness equipment, attend month-end close-out, and to attend mandatory meetings. They were not paid for such activities. If Personal Trainers complained, they were told by managers that it is "part of your job, I will take action, if it is not fixed." Life Time required Personal Trainers to perform these tasks and therefore knew or should have known that Personal Trainers could not complete these tasks unless they worked off the clock.

23.     Another indication that its scheme is illegal is the very high turnover rate of Personal Trainers. Upon information and belief, the turnover rate of new Personal

PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL

Trainers is approximately 40-60% in the first three months of employment; thus a large number of Personal Trainers work for Life Time for a short time and most quit because of being forced to work off the clock without compensation.

**F. Facts Common to All Class Members**

24.     The job duties of Personal Trainers are virtually identical from region to region, district to district, facility to facility, and employee to employee. Any differences in job activities between the different individuals in these positions were and are legally insignificant to the issues presented by this action. The same policies, procedures, employee handbooks and manuals, and compensation plan were distributed to the Personal Trainers. As such, the policies, practice and procedures are uniformly applied to the Personal Trainers which means individual issues will not predominate, and in fact, all issues are systematically linked, related and common, both in terms of facts and law.

25.     Defendant Life Time neither kept accurate records of all the hours worked by Personal Trainers, nor did it provide them with wage statements or paystubs setting forth all hours actually worked at the correct rate of pay. Because Life Time did not set forth the actual amount of hours worked in wage statements or paystubs, Personal Trainers could not and cannot determine whether they were paid properly for all hours worked.

26.     Defendant Life Time regularly, uniformly, and systematically deducted business losses and shortages from the wages of its Personal Trainers; thus diluting the Personal Trainers' hourly wages below the federal and state-law minimum wage.

27.     Defendant Life Time regularly, uniformly, and systematically failed to pay Personal Trainers the minimum wage for each and every hour worked.

28.     Defendant Life Time regularly, uniformly, and systematically required Personal Trainers to work more than 40 hours per week, but did not pay them overtime.

29.     Defendant Life Time regularly, uniformly, and systematically failed to provide Personal Trainers uninterrupted rest periods.

30.     In light of the above allegations, Personal Trainers were not and have not been paid all wages due to them. Life Time's unlawful scheme has resulted in "wage theft." Plaintiffs have brought this action to recover for themselves, and all similarly situated Personal Trainers, the wages pilfered from them by Life Time.

## VI.     FLSA Class Definitions and Allegations

31.     Plaintiffs bring the First Claim for Relief for violations of the FLSA as a collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). Plaintiffs bring the FLSA action on behalf of themselves and all members of the following the class (the "FLSA Class") comprised of:

### A. FLSA Class

All individuals in positions, job titles, job codes, job classifications, or job descriptions of "Personal Trainer" and all other similar nomenclature (including, but not limited to, Personal Trainers, Pilates Instructors, Dietary Technicians, and other similar positions within the Personal Training department) performing substantially identical functions and/or duties, currently or formerly employed by Life Time in Ohio who were not paid the minimum wage or overtime for all hours worked.

32.     Plaintiffs and the members of the FLSA Class are similarly situated in that they have substantially similar job classifications, job duties, job requirements, and were subject to Life Time's common practice, policy, or scheme of willfully and unlawfully deducting business losses and shortages from the Personal Trainers' wages, and forcing them to work off the clock so that they will not earn minimum wage, incur a draw, or earn overtime.

33.     The First Claim for Relief for violations of the FLSA may be brought and maintained as "opt-in" collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. §

216(b), since the claims of Plaintiffs are similar to the claims of the members of the FLSA Class.

34.     The names, addresses and telephone numbers of the members of the FLSA Class are available from Life Time, and notice should be provided to the members of the FLSA Class via first class mail to their last address known as soon as possible.

35.     Plaintiffs seek to recover damages for the FLSA Class for the three years prior to the initial filing of the complaint applying all tolling periods.

## VII.    Ohio Class Definitions and Rule 23 Allegations

36.     Plaintiffs bring the Claims for Relief for violation of Ohio's Constitution as a class action pursuant to Rule 23(a), (b)(2), and (b)(3). Plaintiffs bring these claims on behalf of themselves and all members of the following class (the "Ohio Class") comprised of:

### A. Ohio Personal Trainer Class ("Ohio Class")

All Ohio-based individuals in positions, job titles, job codes, job classifications, or job descriptions of "Personal Trainer" and all other similar nomenclature performing substantially identical functions and/or duties currently or formerly employed by Life Time who were not paid the minimum wage, overtime compensation, who had illegal deductions taken from their wages.

### B. Ohio Subclasses

In the alternative, and for the convenience of the Court and the parties, Ohio Plaintiffs may seek to certify the following subclasses at the time the motion for class certification is filed:

#### 1. Ohio Minimum Wage Subclass

All members of the Ohio Class who Defendant Life Time failed to pay the Ohio minimum for each hour worked during the Ohio Class Period.

#### 2. Ohio Overtime Subclass

All members of the Ohio Class who (1) worked in excess of eight hours per day and/or 40 hours per week; and (2) who Defendant Life Time failed to pay wages at the requisite overtime rates of pay for hours overtime worked during the Ohio Class Period.

## C. Rule 23 Allegations

### 1. Numerosity (Rule 23(a)(1)).

The potential quantity of members of the proposed Ohio Class as defined is so numerous that joinder of all members would be unfeasible and impractical. Plaintiffs are informed and believe that the total number of current and formerly employed members of the Ohio Class number is in the hundreds. The quantity and identity of such membership is readily ascertainable via inspection of Defendant Life Time's employment and payroll records.

### 2. Existence of Common Questions of Law and Fact (Rule 23(a)(2)).

There are common questions of law and fact as to the members of the Ohio Class which predominate over questions affecting only individual members which include, but are not limited to, the following:

a. Whether Defendant Life Time failed to keep accurate records of all hours worked and wages earned by members of the Ohio Class;

b. Whether Defendant Life Time failed to pay members of the Ohio Class the minimum wage in violation of

Article II, §34a of the Ohio Constitution and the Ohio MFWSA, Oh. Rev. Code, Chapter 4111.

    c. Whether the members of the Ohio Class are entitled to compensatory damages, and if so, the means of measuring such damages;

    d. Whether the members of the Ohio Class are entitled to injunctive relief;

    e. Whether the members of the Ohio Class are entitled to restitution; and

    f. Whether Defendants are liable to members of the Ohio Class for attorneys' fees and costs.

**3. Typicality (Rule 23(a)(3)).**

The claims of the Plaintiffs are typical of the claims of all members of the Ohio Class they seek to represent because all members of the Ohio Class sustained injuries and damages arising out of Defendants' common scheme to maximize profits by skimming wages.

**4. Adequacy (Rule 23(a)(4)).**

Plaintiffs are adequate representatives of the proposed Ohio Class they seek to represent because will fairly protect the interests of the members of the Ohio Class, they have no interests antagonistic to the members of the Ohio Class, and they will vigorously pursue this suit via attorneys who are competent, skilled and experienced in litigating matters of this type.

**5. Injunctive and Declaratory Relief (Rule 23(b)(2)).**

Injunctive Relief is appropriate pursuant to Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the members of the Ohio Class, so that final injunctive relief as requested herein is appropriate respecting the Ohio Class as a whole.

6. **Predominance and Superiority of Class Action (Rule 23(b)(3)).**

The nature of this action and the nature of the laws available to members of the Ohio Class make the use of the class action format particularly efficient and the appropriate procedure to afford relief to them for the wrongs alleged herein, for the following reasons:

   a. By establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation;

   b. This case involves a large number of individual class members with many relatively small claims. If each individual member was required to file an individual lawsuit, the Defendants would necessarily gain an unconscionable advantage because it would be able to exploit and overwhelm the limited resources of each individual class member with its vastly superior financial and legal resources;

c.  Requiring each individual member to pursue an individual remedy would also discourage the assertion of lawful claims by class members, who would be disinclined to pursue action against Defendants because of an appreciable and justifiable fear of retaliation and permanent damage to their lives, careers and well-being;

d.  Proof of a common business practice to maximize profits through wage theft will provide the common proof to establish liability against Defendants;

e.  Absent class treatment, the prosecution of separate actions by the individual members of the Ohio Class, even if possible, would likely create:

    i.  a substantial risk of each individual plaintiff presenting in separate, duplicative proceedings the same or essentially similar arguments and evidence, including expert testimony;

    ii.  a multiplicity of trials conducted at enormous expense to both the judicial system and the litigants;

    iii.  inconsistent or varying verdicts or adjudications; and

    iv.  potentially incompatible standards of conduct for Defendants.

f.  The claims of the individual members of the Ohio Class are not sufficiently large to warrant vigorous

individual prosecution considering all of the concomitant costs and expenses attendant thereto;

g. Courts seeking to preserve efficiency and other benefits of class actions routinely fashion methods to manage any individual questions; and

h. Judicial precedent urges trial courts, which have an obligation to consider the use of innovative procedural tools to certify a manageable class, to be procedurally innovative in managing class actions.

37. Finally, adjudicating this action on a class basis is appropriate because liability turns on Defendants' own uniform and systematic scheme to maximize profits by depriving its employees of wages, overtime wages, and forcing them to work off the clock. Class-wide liability can be determined through manageable devices of common proof such as statistical random sampling, survey evidence based on scientific principles, representative testimony, documentary evidence and Defendants' common policies and practices. Once liability is determined, the damages suffered by each member can also be determined by the same common proof.

38. Plaintiffs do not contemplate class notice if the Ohio Class is certified under Rule 23(b)(2), which does not require notice, and notice to the putative Class may be accomplished through publication, or other forms of distribution, if necessary, if the Class is certified under Rule 23(b)(3), or if the Court otherwise determines class notice is required. Plaintiffs will, if notice is so required, confer with Defendants and seek to present the Court with a stipulation and proposed order on the details of a class notice program.

39. Plaintiffs intend to send notice to all members of the Ohio Class or Subclasses to the extent required by Rule 23.

**VIII. <u>Claims for Relief</u>**

**Count One – Violations of the FLSA for Illegally Deducting Business Costs, Uniforms, Prior Earned Wages, and Losses From Wages (29 U.S.C. § 206; 29 C.F.R. § 531.35), Failure to Pay The Minimum Wage (29 U.S.C. § 206), And For Failure to Pay Overtime 29 U.S.C. §§ 201, *et seq.*).**

**(Minimum Wage and Overtime, on Behalf of Themselves and the Class)**

40.     Plaintiffs reallege and incorporate by this reference each of the preceding and foregoing paragraphs as if fully set forth herein.

41.     At all relevant times, Defendants were "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendants employed "employee[s]," including Plaintiffs and each member of the FLSA Class. At all relevant times, Defendants had gross operating revenues in excess of $500,000. Attached hereto as Exhibit A is the Consent to Join Forms signed by Plaintiffs in this action pursuant to § 16(b) of the FLSA, 29 U.S.C. §§ 216(b) and 256. Other individuals have signed consent forms and joined as Plaintiff on this claim (also in Exhibit A). Plaintiffs anticipate that more will be filed in the future.

42.     The FLSA is the nation's basic law governing wages and hours of work, sets the minimum wage and contains standards as to when employers must pay overtime. Code of Federal Regulations § 531.35 provides that employers must pay all statutorily-required minimum wage and overtime premium finally and unconditionally, or "free and clear." The FLSA requires each covered employer such as Defendants, to compensate all nonexempt employees at a rate of not less than the federal minimum wage during the FLSA Class Period. The FLSA also requires each covered employer, such as Defendants, to compensate all nonexempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours in a workweek

43.     As set forth in detail above, Defendants engaged in a common practice or scheme to maximize profits by deducting business losses, uniform costs, past earned wages, and shortages from Personal Trainers' wages. Defendants also pitted managers against their Personal Trainers by deducting draws from the wages of managers. This is in turn resulted in managers instructing, threatening and coercing Personal Trainers to work off the clock and to under-report their hours. Thus, Personal Trainers' wages were not only being diluted by illegal deductions, but they were not being paid for all hours worked, including overtime.

44.     Defendants are large corporations and should have known the requirements of the FLSA or, at least through reasonable research or investigation or communication with their corporate counsel or legal department, that their pay practices violated the FLSA. Defendants clearly have the resources to determine whether they are in compliance with the FLSA, but continued the illegal scheme due to profits, instead of considering the welfare of its employees. That is, Defendants made a rational decision, based on cost/benefit analysis, that it was more profitable to continue with the scheme, instead of changing the scheme to comply with the law. Therefore, Defendants' willfully, voluntarily, deliberately and intentionally violated the FLSA and did not have a "good faith" belief they were in compliance with the FLSA. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of the 29 U.S.C. § 255(a).

45.     By failing to pay Plaintiff, and the members of the FLSA Class, at a rate not less than the minimum wage, Defendants violated the FLSA, 29 U.S.C. § 206. By failing to compensate Plaintiff, and the members of the FLSA Class, at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours in a workweek, Defendants violated the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 207(a)(1) and 215(a). By failing to record, report, and/or preserve records of hours worked by Plaintiffs and the members of the FLSA Class,

Defendants failed to make, keep, and preserve records with respect to each of their employees sufficient to determine their wages, hours, and other conditions and practice of employment, in violation of the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 211(c) and 215(a).

46.     Plaintiffs and the members of the FLSA Class are entitled to past-due wages, an equivalent amount in liquidated damages, costs, and attorneys' fees, as provided by the FLSA, 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the Court deems just and proper.

**Count Two – Violation of Article II, §34a of the Ohio Constitution and the Ohio Minimum Fair Wage Standards Act**
**(On Behalf of Themselves and the Ohio Class)**

47.     Plaintiffs reallege and incorporate by this reference each of the preceding and foregoing paragraphs as if fully set forth herein.

48.     As alleged above, Plaintiffs and members of the Ohio Class were consistently and uniformly not paid the minimum wage or overtime pay for all the work they performed during the course of their employment with Defendants. Defendants' policy and practice was to force Ohio Plaintiffs and members of the Ohio Class to work off the clock to cut costs and increase profits. Defendants' unlawful conduct was neither inadvertent, nor de minimis, but widespread, repeated and part of a pattern and practice of conduct affecting Ohio Plaintiffs and all members of the Ohio Class.

49.     As a result of the foregoing, Plaintiffs and the members of the Ohio Class have been damaged in an amount to be determined at trial. The Ohio Constitution contains a three-year statute of limitations regardless of whether the violation was willful (the "Ohio Class Period"). Therefore, the Ohio Plaintiffs and members of the Ohio Class are entitled to treble damages and attorneys' fees and costs and other relief, including penalties and interest, as this Court deems just and appropriate.

## IX.   **Prayer for Relief**

50.    WHEREFORE, Plaintiffs, on behalf of themselves and all members of the Plaintiff Classes they seek to represent, respectfully pray for relief as follows:

    a.  For an order certifying that the First Claim for Relief of this Complaint may be maintained as a collective action pursuant to 29 U.S.C. § 216(b) and that prompt notice of this action be issued to potential members of the opt-in FLSA Class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims;

    b.  For an order certifying that the Second Claim for Relief be maintained as class actions pursuant to Rule 23 on behalf of the members of the Ohio Classes and/or Ohio Subclasses who were either employed or who performed work in the State of Ohio during the Ohio Class Period and that notice of the pendency of this action be provided to members of the Ohio Class and/or Subclasses;

    c.  Designation of Plaintiffs as the Class Representative for the FLSA Class;

    d.  Designation of Plaintiffs as the Class Representatives for the Ohio Class and/or Subclasses;

    e.  Designation of Plaintiffs' attorneys as Class Counsel for both the FLSA Class, Ohio Classes and/or Subclasses, and/or Ohio Classes and/or Subclasses;

    f.  A declaratory judgment that the practices complained of herein are unlawful under appropriate state law;

    g.  Appropriate equitable relief to remedy Defendants' violations of state law, including but not necessarily limited to an order enjoining Defendants from continuing its unlawful practices;

    h.  Restoration of all business losses, uniform costs, prior earned wages, and shortages improperly deducted by Defendants; 10. For an award of unpaid

minimum wages and liquidated damages in an amount equal to the amount unlawfully unpaid pursuant to the FLSA and Ohio Labor laws.

i. For an award of unpaid Federal minimum wages for each hour worked as required by the FLSA, 29 U.S.C. §206;

j. For an award of unpaid Ohio minimum wages for each hour worked as required by Ohio labor laws.

k. All unpaid overtime as calculated by the applicable provision of the FLSA, 29 U.S.C. §§ 201 et seq., and applicable regulations promulgated in the Code of Federal Regulations and/or opinions and directives of the Department of Labor;

l. All appropriate state and federal statutory interest and penalties;

m. An award of compensatory damages to the extent available, liquidated damages pursuant to the FLSA, and restitution to be paid by Defendants according to proof;

n. Unpaid overtime premium compensation as provided by Ohio and Ohio law for overtime hours worked;

o. Damages, penalties, interest, and Attorneys' fees pursuant to Ohio labor laws.

p. For an order that Defendants make restitution to the Ohio Plaintiffs and the Ohio Classes due to its unlawful business practices, including unlawfully collected compensation pursuant to Ohio labor laws.

q. Pre-Judgment and Post-Judgment interest, as provided by law;

r. Such other equitable relief as the Court may deem just and proper; and

s. Attorneys' fees and costs of suit, including expert fees and fees pursuant to Ohio Labor Laws, Ohio Code of Civil Procedure, Ohio Supreme Court Rules, and other applicable state laws and as permitted by the FLSA.

## X.   Demand for Jury Trial

51.   Plaintiffs demand a jury trial on all causes of action and claims with respect to which they each have a state and/or federal constitutional right to a jury trial.

DATED: September 26, 2018          Respectfully submitted,

*s/ Michael L. Fradin*
Michael L. Fradin

MICHAEL L. FRADIN
*mike@fradinlaw.com*
LAW OFFICE OF MICHAEL L. FRADIN
8401 Crawford Ave. Ste. 104
Skokie, IL 60076
Telephone: 847/986-5889
Facsimile: 847/673-1228

DATED: September 26, 2018          *s/ Jerusalem F. Beligan*
Jerusalem F. Beligan

BRIAN D. CHASE (*pro hac vice pending*)
bchase@bisnarchase.com
JERUSALEM F. BELIGAN (*pro hac vice pending*)
jbeligan@bisnarchase.com
BISNAR|CHASE LLP
1301 Dove Street, Suite 120
Newport Beach, California 92660
Telephone:  949/752-2999
Facsimile:   949/752-2777