**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| GABRIEL RODRIGUEZ and SARAH GIESMAN, | ) | CASE NO. 2:18-cv-01123 |
| | ) | |
| | ) | JUDGE ALGENON L. MARBLEY |
| *Plaintiffs,* | ) | Magistrate Judge Chelsey M. Vascura |
| | ) | |
| v. | ) | |
| | ) | |
| LIFE TIME FITNESS, INC., *et al.,* | ) | |
| | ) | |
| *Defendants* | ) | |

**PLAINTIFF'S MOTION FOR APPROVAL**

**OF COLLECTIVE ACTION SETTLEMENT**

## TABLE OF CONTENTS

I.     SUMMARY OF ARGUMENT.................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND.......................................................2

    A.  The Lawsuit...........................................................................................................2

    B.  Negotiation of the Settlement.................................................................................4

    C.  The Settlement Terms.............................................................................................5

III.   THE PROPRIETY OF APPROVAL.......................................................................6

    A.  The Court Should Approve the FLSA Settlement..........................................................6

        a.   The Proposed Settlement Is the Product of Contested Litigation.............................7

        b.   The Proposed Settlement Reflects a Fair and Reasonable Resolution of a *Bona Fide*

            Dispute Between the Parties.................................................................................7

           i.   *Bona Fide* Dispute Between the Parties Over Liability..................................7

           ii.   The Proposed Settlement Is Fair and Reasonable.........................................8

               1.   There is no risk of fraud or collusion................................................10

               2.   This is a complex case with high expenses and the duration could last

                    many years..................................................................................11

               3.   The Parties have engaged in substantial discovery............................12

               4.   There is no guarantee of success on the merits..................................13

               5.   Experienced Counsel support the settlement...................................,14

               6.   The Settlement distribution are fair, reasonable and adequate...........14

    B.  The Requested Service Awards Should Be Approved............................................15

    C.  Plaintiffs' Counsel's Attorney's Fees and Litigation Costs Are Reasonable and

Should Be Approved.............................................................................................17

    a.  Plaintiffs' Requested Attorney's Fees Are Reasonable............................17

        1.    Value of the Benefit Provided.............................................................19

        2.    Value of Service Rendered on an Hourly Basis................................20

        3.    Whether Services Were Undertaken on Contingency-Fee Basis......21

        4.    Society's Interest in Rewarding Attorneys........................................22

        5.    Complexity of the Litigation...............................................................22

        6.    Professional Skill and Standing of Counsel......................................23

    D.  Plaintiff's Litigation Costs Should Be Approved.....................................23

    E.  The Court Should Approve the Settlement Administrator.....................23

IV.    CONCLUSION...............................................................................................24

# TABLE OF AUTHORITIES

*Adcock-Ladd v. Secretary of Treasury*,

    227 F.3d 343 (6th Cir. 2000)............................................................................................20

*Blum v. Stenson*,

    465 U.S. 896 (1984).........................................................................................................20

*Bogosian v. Gulf Oil Corp.*,

    621 F. Supp. 27 (E.D. Pa. 1985).....................................................................................16

*Brooklyn Savings Bnk v. O' Neil*,

    324 U.S. 697 (1945)...........................................................................................................6

*Carr v. Bob Evans Farms, Inc.*,

    No. 1:17-CV-1875, WL 7508650, at *2 (N.D. Ohio July 27, 2018).....................................6

*Castillo v. Morales, Inc.*,

    2015 WL 13021899, at *5 (S.D. Ohio Dec. 22, 2015)...........................................17, 18, 22

*Connectivity Sys. Inc. v. Nat'l City Bank*,

    2011 WL 292008, at *14 (S.D. Ohio Jan. 25, 2011)..........................................................21

*Cornell v. World Wide Business Servs. Corp.*

    2015 WL 6662919, at *2 (S.D. Ohio Nov. 2, 2015)..........................................................11

*Crawford v. Lexington-Fayette Urban County Government*,

    2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008)........................................................8, 14

*Crosby v. Bowarter Inc. Ret. Plan*,

    262 F. Supp. 2d 804 (W.D. Mich 2003)...........................................................................21

*Dillworth v. Case Farms Processing, Inc.*,

    No. 5:08-CV-1694, 2010 WL 776933, at *6 (N.D. Ohio Mar. 8, 2010)..................8, 15, 19

*Enterprise Energy Corp. v. Colombia Gas Transmission Corp.*,

    137 F.R.D. 240 (S.D. Ohio 1991)......................................................................16

*Fegley v. Higgins*,

    19 F.3d 1126 (6th Cir. 1994)..........................................................................18

*Filbyv. Windsor Mold U.S.A, Inc.*

    2015 WL 1119732, at *2 (N.D. Ohio March 11, 2015)......................................7

*Geier v. Sundquist*,

    372 F.3d 784 (6th Cir. 2004)..........................................................................20

*Granada Invs., Inc. v. DWG Corp.*,

    962 F.2d 1203 (6th Cir. 1992).........................................................................8

*Hainey v. Parrot*,

    617 F. Supp.2d 668 (S.D. Ohio 2007).........................................................7, 11

*In re Broadwing, Inc. ERISA Litig.*,

    252 F.R.D. 369 (S.D. Ohio 2006)...................................................................14

*In re Dunn & Bradstreet Credit Services Customer Litigation*,

    130 F.R.D. 366 (S.D. Ohio 1990)..............................................................15, 16

*In re Jackson Lockdown/MCO Cases*,

    107 F.R.D. 703 (E.D. Mich 1985)...................................................................16

*In re Minolta Camera Products Antitrust Litigation*,

    666 F. Supp. 750 (D. Md. 1987).....................................................................16

*In re Southern Ohio Correctional Facility*,

    175 F.R.D. 270 (S.D. Ohio 1997)...................................................................16

*Johnson v. Midwest Logistics Sys., Ltd.*,

2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013)........................................................17

*Landsberg v. Acton Enterprises, Inc.*,

    2008 WL 2468868 at *1 (S.D. Ohio June 16, 2008)............................................................6


*Lewis v. Huntington Nat'l Bank*,

    2013 WL 12231327, at *3 (S.D. Ohio May 30, 2013)..................................................11, 13

*Lonardo v. Travelers Indem. Co.*,

    706 F. Supp.2d 766 (N.D. Ohio 2010)................................................................................21

*Louisville Black Police Officers Ord. v. City of Louisville*,

    700 F.2d. 268 (6th Cir. 1983).............................................................................................20

*Lynn's Food Stores, Inc. v. U.S.*,

    679 F.2 1350 (11th Cir. 1982)..............................................................................................6

*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust*,

    834 F.2d 677 (7th Cir. 1987)..............................................................................................15

*Ortiz v. Fibreboard Corp.*,

    527 U.S. 815 (1999).............................................................................................................14

*Ramey v. Cincinnati Enquirer, Inc.*,

    508 F.2d 1188 (6thy Cir. 1974)..........................................................................................19

*Rawlings v. Prudential-Bache Props., Inc.*,

    9 F.3d 513 (6th Cir. 1993)...................................................................................................18

*Swigart v. Fifth Third Bank*,

    2014 WL 3447947, at *7 (S.D. Ohio Juky 11, 2014)..........................................................17

*UAW v. General Motors Corp.*,

497 F.3d 615 (6th Cir. 2007)..............................................................................8

*United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n Local 307 v. G & M Roofing and Sheet Metal Co.*,

732 F.2d 495 (6th Cir. 1984)............................................................................18

*Van Horn v. Nationwide Prop. & Cas. Ins. Co.*,

436 F. App' 496 (6th Cir. 2011).......................................................................18

*Williams v. Vukovich*,

720 F.2d.909 (6th Cir. 1983)........................................................................8, 14

*Wolfson v. Riley*,

94 F.R.D. 243 (N.D. Ohio 1981).....................................................................16

## I.     <u>SUMMARY OF ARGUMENT</u>

The Parties, Gabriel Rodriguez, Sarah Giesman, Joseph Rosales and Tyler Everett ("Plaintiffs") and Life Time Fitness, Inc. (which in 2017 prior to this lawsuit changed its name to Life Time, Inc.) ("Defendant" or "Life Time") respectfully move this Honorable Court to review the Parties' Settlement Agreement (the "Settlement") and for an Order approving the Settlement as fair and reasonable.

The proposed settlement will resolve bona fide disputes involving off-the-clock work allegations against Life Time under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as Ohio wage-and-hour statutes for those who choose to file a claim.  In this case, Plaintiffs asserted that Defendant unlawfully failed to pay its hourly, non-exempt employees, including Plaintiffs and other Personal Trainers (or those performing similar work) ("PTs"), for all hours worked.  Specifically, Plaintiff alleged that PTs were required by Defendant to perform unpaid work off-the-clock at the end of their shifts and that this resulted in violations of the FLSA as they were not paid at least 1.5 time the minimum wage for all hours worked.  Defendant adamantly denies liability.  Defendant denies that PTs were required or requested to work off the clock.  Defendant further contends that because the PTs qualify under the "retail or service establishment" definition, 29 U.S.C. § 207(i) ("7(i)"), even if PTs worked off the clock, their effective hourly rates exceeded 1.5 times the applicable minimum wage.  As a result, even if PTs worked off the clock, Defendant contends that there are no violations of the FLSA.

The Parties respectfully submit that the proposed Settlement is fair and reasonable and satisfies the criteria for approval under § 216(b) of the FLSA.  The Settlement was achieved during arms-length negotiations among the Parties, conducted by experienced counsel, and reached after

a full day mediation with Michael Russell, a well-respected mediator of FLSA collective actions, and weeks of further negotiations after the mediation.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Lawsuit

On September 26, 2018, Plaintiffs, Gabriel Rodriguez and Sarah Geisman, filed this matter (the "Lawsuit") as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, on behalf of themselves and other non-exempt PTs, asserting off-the-clock work allegations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219 and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), R.C. 4111.03.  (Dkt. No. 1.)  Opt-in Plaintiffs Tyler Everett and Joseph Rosales later consented to join the Lawsuit as Plaintiffs.

Specifically, Plaintiffs alleged that they and other similarly-situated employees were required by Defendant to perform unpaid work off-the-clock, including, but not limited to: attending mandatory meetings, completing tutorials, quizzes, videos and certifications, training courses, and cleaning the equipment in the fitness centers.  *Id.* As a result, they alleged they were not properly paid for all hours worked, including at least 1.5 times the minimum wage as required by 7(i).

On November 26, 2018, Defendant filed a Motion to Strike Class and Collective Action Claims ("Motion to Strike"), seeking to strike the class and collective allegations on the grounds it claimed that a sister federal court had already ruled that such claims could not proceed collectively and based on judicial comity.  (Dkt. No. 7.)  On December 17, 2018, Plaintiffs filed their Opposition Brief.  Dkt. No. 14.  On January 3, 2019, Defendant filed a Reply Brief.  (Dkt. No. 21.)  On September 25, 2019, this Court denied Defendant's Motion to Strike Class and Collection action claims.  (Dkt. No. 27.)

The Parties agreed to engage in a due diligence period between October 2019 and July 2020 during which time Defendant provided timekeeping, payroll, and scheduling records for an agreed-upon sampling of 41 putative Class Members plus all four Plaintiffs to facilitate settlement discussions. ( Silver Decl. at ¶ 13.). During that time, Plaintiffs engaged an expert to analyze the data along with input from Plaintiffs' counsel. (*Id*. at ¶ 14.). Defendant independently analyzed liability and damages.

The Parties also agreed to a tolling agreement on the FLSA claims starting November 13, 2019, which was later ordered by the Court. (See Dkt. No 31) As a result, the three-year FLSA period is from November 13, 2016 to the present (although as noted below due to the change of Defendant's employment practices, the Parties agreed the FLSA period would end April 13, 2019). The Court extended the tolling agreement multiple times, with the most recent order tolling the period through ruling on the Motion for Approval of the settlement (See Dkt. No. 39)

Between October 2019 and July 2020, the Parties also engaged in discovery, including written discovery issued by Defendant to the Plaintiffs and narrowed those topics to those relevant for discussion of a potential resolution through mediation. (*Id*. at ¶ 13.). Additionally, Plaintiffs' Counsel engaged in discussions and correspondence with the Plaintiff and Opt-In Plaintiffs, including numerous telephone interviews. (*Id*. at ¶¶ 56-57.) During this time, Defendant informed Plaintiffs' counsel that during the FLSA period it changed its relevant policies that Plaintiffs contend were at the heart of the dispute. As confirmed in the settlement agreement, in December 2018, Defendant began the process of eliminating the "recoverable draw" against commissions element of PTs' pay, which was an alleged source of the issue which Plaintiffs contend led to this litigation. (*See* Silvers Decl. ¶ 11.). Life Time confirmed this process was completed for all PTs by March 2019. (*Id.).* Although Defendant continues to deny there were any violations of the law,

it confirmed that this change was made, at least in part, due to the Lawsuit. (Silvers Dec. ¶ 11). Therefore, Plaintiffs contend that the Lawsuit has, at least in part, resulted in injunctive relief as Defendant has discontinued the employment practice that led to this litigation. This is also why the class period ends on April 13, 2019 (the date that work through March 31, 2019 would have been paid and as such the last date of any potential violation). (*Id.*)

### B.    Negotiation of The Settlement

The Parties engaged in substantial investigation and informal discovery prior to negotiating the Settlement. (*Id.* at ¶ 12.) Prior to filing the Lawsuit, Plaintiffs' Counsel performed a significant amount of research and factual investigation of the claims to set forth a factually specific Complaint for the Court and Defendant. (*Id.*) The Parties engaged in a comprehensive exchange of information and discussions regarding Plaintiffs' claims and Defendant's defenses to such claims (including 7(i) of the FLSA and recent Sixth Circuit case law on this specific defense). (Silvers Decl. at ¶ 12.) This included a complete analysis and calculations of Plaintiffs' alleged off-the-clock damages. (*Id.*)

Between October 2019 and July 2020, the Parties exchanged information and engaged in numerous telephone discussions regarding the calculation of damages and potential resolution. (*Id.* at ¶ 13.)

On July 29, 2020, the Parties held a mediation via zoom with Michael Russell, a well-respected mediator of FLSA collective actions and, after a full-day mediation and despite good faith efforts, the Parties were unable to reach an agreement to settle the Lawsuit. (*Id.* at ¶ 14). However, Michael Russell continued to attempt to resolve the case. Between July 2020 and September 2020, the Parties engaged in further settlement negotiations with the assistance of Michael Russell, including discussions between Counsel for the Parties detailing the Parties' legal

and factual positions. (*Id.* at ¶ 14.)

### C. **The Settlement Terms**

If approved by the Court, the Settlement will cover Plaintiffs, and the participating Class Members. The Settlement Amount is Four Hundred Twenty-Five Thousand Dollars ($425,000.00) for settlement of the FLSA claims as well as Ohio state law wage and hour claims alleged or that could have been alleged based on the claims, for those who submit claim forms, which is inclusive of: (a) all of the Individual Settlement Payments to Class Members; (b) Service Award Payments as approved by the Court; and (c) Plaintiffs' Counsel's attorneys' fees and expenses as approved by the Court. (Silvers Decl, ¶ 23, Exh. 1, Section 6). The Settlement Administrator's costs are being paid by Defendant separate from the $425,000 Settlement Amount. (*ID.* at Section 10(a).) The Class Members covered by the settlement are all current or former employees of Defendant who work or worked as PTs in the state of Ohio between November 16, 2016 and April 13, 2019 (the "Relevant Period"). (Silvers Decl, ¶ 23, Exh. 1, Section 1(a).

Defendants, through the Qualified Settlement Fund ("QSF,") will pay to each Class Member who submits a timely claim form the amount based on the agreed formula. (*Id.* at Section 6(c).).The formula used to determine each Class Member's share of the Net Settlement Fund for Payments is based on the number of two-week pay periods worked in the Class Period by the Class Member, divided by the total workweeks of all potential Class Members who could submit claims, and then multiplying this resulting amount by the Net Settlement Amount. (*Id.)*

In exchange for the payments, the Lawsuit will be dismissed with prejudice, and Plaintiffs and Class Members who endorse a settlement check will release Defendant from all wage and hour claims, rights, demands, liabilities and causes of action under federal and state law that were specifically alleged in the Lawsuit or that reasonably arise out of the factual predicate of the acts

alleged in the Lawsuit, through April 13, 2019, including without limitation all known or unknown claims for unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees, and expenses, under the FLSA and Ohio state law. (*Id.* at Sections 18 and 19).

## III.   THE PROPRIETY OF APPROVAL

The proposed Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA.  As shown in the attached Declarations of Counsel filed with this motion and as explained below, Court approval is warranted.

### A.   The Court Should Approve the FLSA Settlement.

To approve an FLSA collective action settlement, a district court need only engage in a one-step process. *Carr v. Bob Evans Farms, Inc.,* No. 1:17-CV-1875, 2018 WL 7508650, at *2 (N.D. Ohio July 27, 2018). Because failure to opt in does not bar potential collective action members from bringing their own suits, and this settlement only covers persons who joined/will opt-in to this litigation, collective actions do not implicate the same due process concerns as class actions under Federal Rule of Civil Procedure 23. *Id.* For this reason, the standard for approval of a FLSA settlement is straightforward: a district court should approve a settlement if it was reached as a result of contested litigation and it is a fair and reasonable resolution of a *bona fide* dispute between the parties. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945); *see also Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (the court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 216(b) "after scrutinizing the settlement for fairness."). "The existence of a *bona fide* dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to

avoid its obligation under the FLSA." *Filby v. Windsor Mold USA, Inc.,* 2015 WL 1119732, at *2 (N.D. Ohio March 11, 2015).

### a. The Proposed Settlement Is the Product of Contested Litigation.

The Settlement is a result of contested litigation, reached in the context of this Lawsuit. The Lawsuit has been pending for over two years and was resolved only after substantial informal discovery and motion practice (including Defendant's Motion to Strike the Class Allegations) . In this context, the Parties had an opportunity to analyze the pertinent factual and legal issues and assess the strengths and weaknesses of the claims and defenses at issue in this case. (Silvers Decl. ¶¶ 14-16.) And "the participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties." *See Hainey v. Parrot,* 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007). Here, the parties mediated with Michael Russell and although it was not resolved on the day of the mediation, he continued to facilitate settlement discussion thereafter until the case was resolved.

### b. The Proposed Settlement Reflects a Fair and Reasonable Resolution of a *Bona Fide* Dispute Between the Parties.

The second prong of the Court's settlement approval inquiry focuses on two issues: (1) confirming the existence of a *bona fide* dispute between the Parties and (2) reviewing the fairness and reasonableness of the proposed settlement. Both issues are satisfied here.

### i. *Bona Fide* Dispute Between the Parties Over Liability.

Plaintiffs allege that they and other similarly-situated PTs were required by Defendant to perform unpaid work off-the-clock. Defendant adamantly denies that it engaged in any unlawful or improper conduct, including permitting any off-the-clock work and denies all liability and damages of any kind to anyone regarding Plaintiffs' claims (including under 7(i)). (Silvers Dec. ¶ 20).

The Parties also dispute whether collective treatment of Plaintiffs' FLSA claims was appropriate. Defendant filed a Motion to Strike Class Allegations, which was opposed by Plaintiffs. Defendant continues to deny that the Lawsuit could be litigated on a collective action basis. Absent settlement, Defendant would oppose a Motion for Conditional Certification and if the Court denied Plaintiffs' Motion for Certification or granted Defendant's decertification motion, the 287 Class Members who will benefit from this settlement would need to file individual lawsuits in order to proceed with their individual claims.

### ii. The Proposed Settlement Is Fair and Reasonable.

"The need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven factors to evaluate settlements, and the *Crawford* court applied those factors in assessing the fairness of an FLSA settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir. 1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir. 1983)), *quoted in Crawford,* 2008 WL 4724499 at *3; *see also Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *6 (N.D. Ohio Mar. 8, 2010).

As detailed above, Plaintiffs allege that they and other similarly-situated employees were required by Defendant to perform unpaid work off-the-clock, and as a result were not properly paid for all hours worked (including that they were not paid at least 1.5 times the minimum wage

as required by 7(i)).  As between the four Plaintiffs, they worked at one point or another from 2007 through the end of the relevant time period, they were able to give reasonable estimates of the hours worked off the clock per week by Class Members. (Silvers Dec. ¶ 27).  Based on this, Plaintiff's expert analyzed the sampling of 41 putative Class Members plus all four Plaintiffs based on 10 hours of assumed off the clock work per week by each Class Member. (*Id.*) Defendant of course disputes that anyone in the Settlement Class worked off the clock at all and contends that claiming even five hours off the clock in a week would be an excessive assumption.  (*Id.*)

Plaintiff's expert included the 10 hours off the clock work per week and compared this to the requirements of 7(i) of the FLSA to determine whether a violation occurred each pay period and if so, the amount owed. (Silvers Dec. ¶ 29).  Based on that analysis, Plaintiff's expert calculated that for the FLSA claims, there was $622,026 in wages owed to Settlement Class, meaning the settlement would represent about 67.89% of the maximum available backpay. (*Id.*) Plaintiffs also alleged liquidated damages would be owed.  (Silvers Dec. ¶ 29).  At most, this would double the above amount to $1,244,053, meaning the settlement would then represent about 34.16% of the maximum available backpay and penalties.  (*Id.*) However, Defendant has and would contend that liquidated damages are not recoverable here based on the lack of willfulness, including that Defendant contends there is no evidence it encouraged employees to work off the clock and, to the extent they worked off the clock, it was in violation of Defendant's policies.  (*Id.*)  This had to be taken into account in evaluating the potential recovery of liquidated damages.  (*Id.*)

The above calculations and percentages do not account for the additional value of the essentially injunctive relief obtained by Plaintiffs, as Defendant ceased the recoverable draw practice that Plaintiffs contend caused the incentive to work off the clock and Plaintiffs contend was at the heart of the issue here, at least in part due to the Lawsuit. (Silvers Dec. ¶ 29). This item

of recovery is invaluable as it helped prevent alleged violations from continuing to occur to Defendant's PTs during the almost two years since Defendant changed the recoverale draw practice. (*Id.*)

While the above percentages of recovery are reasonable by themselves based on the facts of this case, they do not take into account the risks/factors Plaintiffs used to evaluate the reasonableness of the settlement. (Silvers Dec. ¶ 30). When taken into account, these would decrease the maximum potential recovery and thus result in the settlement representing a higher percentage of the total possible recovery. (*Id.*) Those risks include: (i) strength of defenses; (ii) risk of certification being denied; (iii) risk of losing on dispositive motions that eliminate all/some claims/evidence; (iv) risk of losing at trial or prevailing on only some claims; (v) risk that the amount of off the clock work would be shown to be less than 10 hours per week; (vi) risk that no liquidated damages would be awarded; and (vii) chances of a favorable verdict reversed on appeal. (*Id.*)  As such, Plaintiff's counsel opines that the settlement is fair and reasonable and should be approved. (*Id.*)

### 1. There is no risk of fraud or collusion.

This settlement was fairly and honestly negotiated.  Plaintiffs' Counsel and Defendant's Counsel each have extensive experience litigating FLSA claims, including claims for unpaid hours worked.  (*See* Silvers Decl. and Fradin Decl. regarding Plaintiffs' counsel).  The Settlement Agreement was achieved only after arms-length and good faith negotiations between the Parties with the assistance of an experienced mediator, occurring after substantial discovery, motion practice, and Counsel for the Parties vigorously arguing their legal and factual positions. (Silvers Decl. ¶¶ 32-32; Fradin Decl. ¶¶ 9-12)  In this context, there is a presumption that the risk of fraud

or collusion is negligible. *Lewis v. Huntington Nat'l Bank*, 2013 WL 12231327, at *3 (S.D. Ohio May 30, 2013) (Marbley, J.); *see also Hainey*, 617 F. Supp. 2d at 673.

> ## 2. This is a complex case with high expenses and the duration could last many years.

The policy favoring the settlement of wage and hour collective actions and other complex cases applies with particular force here. Employment class and collective actions are expensive and time-consuming. Moreover, the Parties continue to disagree over the merits and viability of certification of Plaintiffs' claims, as detailed above. The Parties also disagree whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applied. (Silvers Dec. at ¶ 29.) Defendant claims that even if Plaintiffs succeed on the merits, Plaintiffs cannot not prove a willful violation of the law, and thus, no wages would be owed for the third year of the three-year limitations period. (*Id.*) Defendant further contends that even if violations were shown, no liquidated damages would be recoverable. (*Id.*) As outlined above, the Parties disagree about the merits of Plaintiffs' claims and the viability of Defendants' various defenses (including the applicability of 7(i)). If the litigation continued, Plaintiffs would have faced obstacles and uncertainties, including motions for decertification and summary judgment, as well as potentially a trial. *See, e.g., Lewis v. Huntington Nat'l Bank*, No. 2:11-CV-00058, 2013 WL 12231327, at *3 (S.D. Ohio May 30, 2013) (Marbley, J.) (recognizing that, absent settlement, wage and hour plaintiffs "would have had to show, through testimony and documentary evidence, the specific hours, times, and dates worked—a process requiring extensive and expensive additional discovery"); *Cornell v. World Wide Business Servs. Corp.,* 2015 WL 6662919, at *2 (S.D. Ohio Nov. 2, 2015) (decertifying collective because of "disparate factual and employment settings" of the individual opt-in plaintiffs).

This matter has already been litigated for over two (2) years, and included substantial discovery and motion practice, (Silvers Decl, ¶¶ 12-22.)  Further, the Parties have already incurred substantial expenses, prior to depositions taking place, including Plaintiffs' Counsel incurring almost $7,500 in expenses.  (*Id.* at ¶ 38.)

If forced to litigate this case further, the Parties would incur substantial expenses and fees in continuing discovery, including to take depositions of any named expert witnesses, Plaintiffs, other putative Class Members as well as Rule 30(b) depositions of Defendant.  (*Id.* at ¶ 37.)  The out-of-pocket costs alone would likely be in at least the mid six-figures.

Moreover, the Parties would incur substantial fees in further motion practice, including dispositive motions, a decertification motion, and a Rule 23 Motion for Certification.  (*Id.* at ¶ 37.)  By the time of trial, the Parties' attorneys' fees on each side are likely to be in the millions, and costs exceeding six-figures. (*Id.* at ¶ 37.)

In view of the costs, risks and delay of continued litigation balanced against the benefits of settlement, the Settlement is in the best interests of the Plaintiffs and Class Members.  It provides substantial relief to Class members  (which are significant as shown below based on the payments to putative Class Members and the injunctive relief obtained based on Defendant ceasing the recoverable draw practice that was at the heart of the issue here)  and amplifies the benefits of that relief through the economies of collective resolution.  (*Id.* at. 38.)

### 3.  The Parties have engaged in substantial discovery.

The Parties have engaged in substantial investigation prior to and during the settlement negotiations and the issues are well understood by both sides.  (Silvers Decl. at ¶¶ 12-16, Fradin Decl.  ¶¶ 9-12.)   Relevant information was produced, including timekeeping, payroll and

scheduling data for the four Plaintiffs and 41 other putative Class Members.  (Silvers Decl. at ¶¶ 12-16.)

The legal issues in the case were thoroughly researched and briefed by Counsel for the Parties (including as part of the Motion to Strike Class Claims addressing whether the alleged claims could even proceed).  (*Id.* at ¶¶ 12-16.)  Additionally,  through the mediation and subsequent negotiations (through Michael Russell and directly between counsel), the issues were further explored and relevant information on the claims and basis thereof was exchanged.  As such, all aspects of the dispute are well-understood by both sides.  (*Id.*)

### 4.  There is no guarantee of success on the merits.

The Parties recognize that the final outcome of the litigation is uncertain and that achieving a final result through the litigation and appeal process would require substantial additional risk, time and expense.  (*Id.* at ¶ 20.)   Defendant denies that it engaged in any unlawful or improper conduct including, expressly, all off-the-clock work claims of Plaintiffs and Class Members; denies all liability and damages of any kind to anyone regarding the claims; and denies that this case could be litigated on a collective and class basis, whether as a Rule 23 class or as an FLSA collective action.  (*Id.* at ¶ 20.)

There is no guarantee that the Plaintiffs would prevail on certification of the class or, if granted, whether Plaintiffs will prevail on Defendant's anticipated motion to decertify the conditionally certified class or motion for summary judgment.  (*Id.* at ¶ 21.)  Moreover, Defendant raises affirmative defenses to Plaintiffs' claims, and the outcome of those defenses at trial is uncertain as well.  (*Id.* at ¶ 21.)  Continued litigation could be risky for all Parties, and could result in appeals regardless of the outcome of the trial.  (*Id.*)

If this ligation continues, Plaintiffs face obstacles and uncertainties, including extensive and expensive discovery, and potential losses during the certification, decertification and summary judgment phases, and a trial.   (*Id.* at ¶ 22.)  *See, e.g., Lewis v. Huntington Nat'l Bank*, No. 2:11-CV-00058, 2013 WL 12231327, *3 (S.D. Ohio May, 2013) (Marbley, J.). For example, Plaintiffs would have had to show that they were actually performing off-the-clock work, which would require significant discovery and testimony to establish.

### 5. Experienced Counsel support the settlement

The opinions of experienced Counsel of the Parties support the Settlement (*See* Silvers and Fradin Declarations.)  Courts should generally "defer to the judgment of experienced counsel who [have] competently evaluated the strength of [their] proofs," *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir. 1983), especially when the case has been developed through discovery. *See In re Broadwing, Inc. ERISA Litig.,* 252 F.R.D. 369, 375 (S.D. Ohio 2006). Plaintiffs' counsel supports the Settlement. (Silvers Decl. ¶ 30). Furthermore, Defendant is represented by experienced counsel who have represented this Defendant before regarding these same issues in other states and who also negotiated the settlement. (*Id.*)

### 6. The Settlement distributions are fair, reasonable and adequate.

In reviewing a FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999)). In the present case, the Settlement Agreement provides that the Settlement Payment, after deduction of the Service Award to the Plaintiffs, as well as attorneys' fees and litigation costs reimbursements to Plaintiffs' Counsel, will be divided into pro rata Individual Settlement Payments to Class Members.

The benefit that Plaintiffs will receive from the Net Settlement Amount as compared to the maximum they potentially could have received if they had prevailed at trial is fair and reasonable. Based on a Net Settlement Amount of $225,000 (although it will be slightly higher as Plaintiffs' counsel is seeking slightly less in fees than the maximum allowed under the Settlement Agreement), the Individual Settlement Payments range from a minimum payment of $ 28.82 to a maximum payment of $2,508.00.   (Declaration of Michael Bui ("Bui Dec") ¶ 5.) The Net Settlement Amount of $225,000 represents $783.97 per Plaintiff on average. (*Id.*) As noted above, the recovery represents a significant percentage of the alleged wages owed, which is an excellent result. *Dillworth*, 2010 WL 776933, at *8 (finding that a recovery of one-third of the owed wages for class members, before deducting attorney's fees and costs, is "well above" average); *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust,* 834 F.2d 677, 682 (7th Cir.1987) (finding adequate a settlement of 10% of the total sought due to risks and costs of trial).[1] This does not take into account that Plaintiffs obtained injunctive relief as Defendant stopped the recoverable draw that was at issue here, at least in part due to the Lawsuit.

### B.     The Requested Service Awards Should Be Approved.

The Settlement contemplates providing a $7,500 Service Award to the Plaintiffs Rodriguez and Giesman and $2,500 Service Awards to the opt-in Plaintiffs Tyler Everett and Joseph Rosales.

---

[1]      *See also Lazy Oil Co. v. Witco,* 95 F.Supp.2d 290, 339 (W.D. Pa.1997) (approving 35% recovery for the entire class period, and 25.5% of damages within the limitations period); *In re Domestic Air Tranp. Antitrust Litig.,* 148 F.R.D. 297, 325 (N.D. Ga. 1993) (12.7% to 15.3%); *In re Newbridge Networks Sec. Litig.,* 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) (approving settlement and concluding that while "[c]ourts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; [ ] an agreement that secures roughly six to twelve percent of a *potential* trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness"); *In re Ravisent Techs., Inc. Sec. Litig.,* 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement, which amounted to 12.2% of damages, and citing a study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted).

Service awards to representative Plaintiffs recognizing the value of his or her services on behalf of other participants are proper. As stated in *In re Dunn & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366 (S.D. Ohio 1990):

> Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent.

130 F.R.D. at 373 (citing *Wolfson v. Riley*, 94 F.R.D. 243 (N.D. Ohio 1981); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985); *In re Minolta Camera Products Antitrust Litigation*, 666 F. Supp. 750, 752 (D. Md. 1987)).

In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other Class Members in assisting class counsel with litigation, such as by actively reviewing case and advising counsel in prosecution of case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997).

Courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *Dun & Bradstreet*, 130 F.R.D. at 374 (citing *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 710 (E.D. Mich. 1985)). *See also Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

In the present case, Counsel Michael Fradin's Declaration establishes the basis for Plaintiffs' contention that the proposed Service Awards are proper and reasonable. (Fradin Decl. at ¶¶ 16-20.) Plaintiffs' services were effective. (*Id.*) They provided extensive factual information to Plaintiffs' Counsel and faithfully engaged in numerous and extensive calls and other

communications with Plaintiffs' Counsel. (*Id.*) Moreover, they subjected themselves to the responsibilities of serving as Plaintiffs in a lawsuit against their former employer. (*Id.*)[2] This includes (a) the emotional and mental stresses of dealing with this lawsuit, and the potential of having a judgment entered against them if they lost; (b) exposure to attorneys' fees and costs if Defendant would have won; (c) the real potential of losing job opportunities because they filed/litigated this case; and (d) for the substantial hours dedicated to this case both before and after this lawsuit was filed, which was time lost from being with their family, friends and work. (*Id.*).

The requested payments are proportional to service payments recently awarded to plaintiffs in other FLSA actions. *See Castillo v. Morales, Inc.*, 2015 WL 13021899, at *5 (S.D. Ohio Dec. 22, 2015) (Marbley, J.) (awarding $8,000 service payment to class representative in wage and hour case); *Swigart v. Fifth Third Bank*, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (awarding $10,000 service payments to two class representatives in wage and hour case); *Johnson v. Midwest Logistics Sys., Ltd.,* 2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013) (awarding $12,500 service award).[3]

    **C.**    **<u>Plaintiffs' Counsel's Attorneys' Fees and Litigation Costs Are Reasonable and Should Be Approved.</u>[4]**

        **a.**  **Plaintiffs' Requested Attorney's Fees Are Reasonable.**

---

[2] *See Castillo v. Morales, Inc.*, 2015 WL 13021899, at *5 (S.D. Ohio Dec. 22, 2015) (Marbley, J.) (awarding $8,000 service payment to class representative in wage and hour case); *Swigart v. Fifth Third Bank*, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (awarding $10,000 service payments to two class representatives in wage and hour case); *Johnson v. Midwest Logistics Sys., Ltd.,* 2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013) (awarding $12,500 service award).

[3] *See also*, *Koszyk v. Country Fin.*, 2016 WL 5109196, at *6-7 (N.D. Ill. Sept. 16, 2016) (approving $10,000 service payments for each of seven plaintiffs in a FLSA collective action).

[4] While Defendant does not oppose Plaintiffs' request for approval of payment of attorney's fees, Defendant does not join in the request.

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b).  The attorney's fees provision of the FLSA exists to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail, and thereby to help ensure enforcement of the substantive provisions of the Act. 29 U.S.C. §216(b).

In *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994)*,* the Sixth Circuit held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley,* 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984)).

There are two methods for determining whether a fee is reasonable: the lodestar method and the percentage-of-the-fund method. *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App' 496, 498 (6th Cir. 2011). The Court has the discretion to use either the lodestar method or a percentage of the common fund to award reasonable attorney fees. *Castillo v. Morales, Inc.*, 2015 WL 13021899, at *6 (S.D. Ohio Dec. 22, 2015) (Marbley, J.) (*citing See Rawlings v. Prudential-Bache Props., Inc.,* 9 F.3d 513, 516-17 (6th Cir. 1993)). "In the Southern District of Ohio, the preferred method is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier." *Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*, 2017 WL 5247538, at *5 (S.D. Ohio Nov. 13, 2017) (quotations and citation omitted). Here, Plaintiffs request that the Court use the percentage method and award them 40% of the settlement fund, which as noted below is significantly lower than Class Counsels' lodestar.  Under the settlement

agreement, Plaintiffs' counsel could have requested fees and costs of $180,000, which would have resulted in fees being approximately 40.5%.

Plaintiffs' Counsel's Declaration contains information that demonstrates the reasonableness of the proposed fees and expenses. (*See* Fradin and Silvers Declarations). The litigation expenses sought to be reimbursed are proper and reasonable. Plaintiffs' Counsel has incurred expenses in the amount of $7,482.65 during the litigation of this action. (Fradin Dec. at ¶ 15; Silvers Decl. at ¶ 38.)

The Sixth Circuit considers the following factors in determining whether the requested fee is reasonable: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent-fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *Castillo*, 2015 WL 13021899, at *6 (Marbley, J.) (citing, among others, *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974)). Each of these factors weighs strongly in favor of the reasonableness of the requested fee.

### 1. Value of the Benefit Provided

Under this Settlement, all Plaintiffs receive payments representing a substantial recovery on their alleged off-the-clock work claims. Instead of the risks of continued litigation, as detailed above, the Settlement Class will receive approximately 68% of their maximum available back pay, which is well above the average recovery in FLSA lawsuits. For example, in *Dillworth*, 2010 WL 776933, at *8, the Court concluded that a recovery of one-third of the owed wages for class members, before deducting attorney's fees and costs, is "well above" average. Similarly, in *Rotuna.,* 2010 WL 2490989 at *8 the Court explained that **a** recovery of 75% to 25% of claimed

wages as "exceptional."; Measured against that standard, the Settlement in the present case is exemplary.

### 2. Value of Services Rendered on an Hourly Basis

For purposes of determining a reasonable attorney's fee, the hourly rate must be calculated in accordance with the prevailing market rate in the relevant community. *Blum v. Stenson*, 465 U.S. 896, 895 (1984). Generally, the "prevailing market rate [is] defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist,* 372 F.3d 784, 791 (6th Cir.2004) (citing *Adcock–Ladd v. Secretary of Treasury,* 227 F.3d 343, 350 (6th Cir. 2000)). There is, however, an exception to the general rule that the prevailing market rates of the local community govern the lodestar analysis, and, in this circuit, the exception is known as the "out-of-town specialist." *See Hadix,* 65 F.3d at 535 (citation omitted); *Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268, 278 (6th Cir. 1983) ("District courts are free to look to a national market, an area of specialization market or any other market they believe appropriate to fairly compensate particular attorneys in individual cases."). Attorneys who specialize in particular fields tend to charge more for their services and tend to be found in larger cities where the cost of litigation is more expensive. *See Chrapliwy,* 670 F.2d at 769 (emphasis added). When fees are sought for an "out-of-town specialist," "courts must determine (1) whether hiring the out-of-town specialist was reasonable in the first instance, and (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation." *Hadix,* 65 F.3d at 535, citing *Chrapliwy,* 670 F.2d at 768–69.

Michael L. Fradin is highly experienced in civil rights and employment matters and the only lawyer in Southeast Ohio who represents plaintiffs in class and collective actions. (Fradin Decl. ¶¶ 3-8). It was reasonable for Plaintiffs to also retain Jerusalem Beligan and Ian Silvers who

are experienced and accomplished wage and hour attorneys in California, and whose practice includes similar representation across the country. (Silvers Decl. ¶ 34, Exhibit 1)

Here, to date, Plaintiffs' Counsel's total lodestar fees are $259,155 (Silvers Decl. ¶ 35; Fradin Decl. ¶ 10). The allocation of fees by timekeeper and their reasonable rates are detailed in the supporting declarations attached hereto. (Silvers Decl. ¶ 35; Fradin Decl. ¶ 13.).

In this complex class action settlement, which resolves the claims of hundreds of employees, Plaintiffs' Counsel's lodestar is likely to substantially increase in the future. Plaintiffs' Counsel will spend time fulfilling their obligations in the Settlement Agreement, administering the Settlement, and responding to Plaintiffs' and Class Member inquiries. *Id.*

### 3. Whether Services Were Undertaken on Contingent-Fee Basis

Plaintiffs' Counsel undertook the representation on a purely contingent basis. (Silvers Decl. ¶ 31.). Thus, Plaintiffs' Counsel has borne all of the risk that accompanies contingent-fee representation, including the prospect – very real in this case, that the investment of substantial attorney time and resources would be lost. *Id.* Counsel should be compensated for this risk. *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 796 (N.D. Ohio 2010); *see also Crosby v. Bowarter Inc. Ret. Plan*, 262 F. Supp. 2d 804, 814 (W.D. Mich. 2003) ("contingency serves to justify the higher fee"). "There is a public interest in ensuring that attorneys willing to represent clients in class action litigation are adequately paid so that they and others like them will continue to take on such cases." *Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 WL 292008, at *14 (S.D. Ohio Jan. 25, 2011). Here, the contingency fee is a **decrease** from Plaintiffs' Counsels' lodestar, and so should be awarded without hesitation. In fact, awarding the requested fees would result in a multiplier of Class counsels' lodestar of .85. (Silvers Decl. ¶ 36) Furthermore, had this been an individual case on a contingency fee, counsel would have obtained fees of 40% of any resolution up to 30 days before trial and 45% thereafter, per the signed retainer. (Silvers Decl. ¶ 42.). As such,

awarding the requested percentage of the common fund is in line with what would have been received under such a contingency fee agreement and is in fact significantly lower than Class Counsels' lodestar.

Furthermore, had this case not settled, Plaintiffs' Counsel would have vigorously litigated the case without any promise of success and compensation. (Silvers Decl. at ¶ 32.) At every step of the litigation, Defendant could have succeeded. Therefore, Plaintiffs were at great risk for non-payment. (*Id.*) This risk of non-payment strongly supports the amount requested here.

### 4. Society's Interest in Rewarding Attorneys

There is no doubt that "society certainly has an interest in incentivizing attorneys to assist in combatting illegal nonpayment of wages." *Castillo*, 2015 WL 13021899, at *6 (Marbley, J.) (citing *Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994)). Plaintiffs' counsel took on this matter to represent Plaintiffs in their off-the-clock work claims against Defendant and litigated for over two years (including obtaining essentially injunctive relief) against experienced Defendant's Counsel. This factor supports awarding the requested fees to encourage qualified attorneys to represent employees in claims for unpaid wages.

### 5. Complexity of the Litigation

"Wage-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Swigart,* 2014 WL 3447947, at *7 (citation omitted). Had this matter not resolved, the parties faced the potential of complex motion practice, both over the merits, as well as on collective treatment. Here, there was also recent binding Sixth Circuit law addressing 7(i), the applicability and relevance of which the Parties addressed in the Motion to Strike and mediation.

Plaintiffs' Counsel's Declarations contain information that demonstrates the reasonableness of the proposed fees and expenses. Plaintiffs' Counsel has worked diligently in

representing Plaintiffs and the Putative Class Members.  Prior to filing the Lawsuit, Plaintiffs'

Counsel performed a significant amount of research and factual investigation of the claims to set

forth a factually specific and accurate Complaint for the Court and Defendant.  (Silvers Decl. ¶ 12;

Fradin Decl, ¶ 11.) Over the course of over two (2) years, this matter was contentiously litigated.

The Parties engaged in substantial discovery and motion practice.

### 6.  Professional Skill and Standing of Counsel

Counsel are highly qualified and experienced, and each have substantial credentials in class

and collective action litigation. (Silvers Decl. ¶¶ 3-7, Exhibit 1; Fradin Decl. ¶¶ 3-8.) For the

foregoing reasons, Plaintiffs' Counsel's requested attorney's fees of $170,000 should be approved.

### D.     Plaintiff's Litigation Costs Should Be Approved.

The litigation expenses sought to be reimbursed are proper and reasonable.  Expenses are

estimated to be approximately $7,482.65, which includes, but is not limited to, costs for items such

as filing fees, service and expert fees (Silvers Decl. ¶ 38, Exhibit 4; Fradin Decl. ¶ 15.) The

expenses incurred are reasonable and their reimbursement should be approved. *Swigart*, 2014 WL

3447947, at *7 (reimbursing $39,406.46 in out-of-pocket litigation expenses" that "were

reasonable and necessary in connection with litigating and resolving this case and are

reimbursable.").

### E.     The Court Should Approve the Settlement Administrator

Although Defendant is paying for the cost of the Settlement Administrator outside of the

settlement, and thus we do not seek approval of the amount for those costs, Plaintiffs request that

the Court approve Simpluris, Inc. as the Settlement Administrator   Simpluris has vast experience

in such matters and this experience as well as the duties it has and will perform are detailed on the

attached declaration from Michael Bui.  (Bui Decl. at ¶ 2.)

IV.    **CONCLUSION**

For the reasons addressed above, the Parties respectfully request that this Court approve

the Settlement by entering the Proposed Order Approving Settlement and Dismissal with Prejudice

attached as hereto as Exhibit A to the Settlement Agreement.

Respectfully submitted,


DATED: January 18, 2021              /s/ Michael L. Fradin
                                     Michael L. Fradin

                                     MICHAEL L. FRADIN
                                     mike@fradinlaw.com
                                     LAW OFFICE OF MICHAEL L.
                                     FRADIN
                                     8401 Crawford Ave. Ste. 104
                                     Skokie, IL 60076
                                     Telephone: 847/986-5889
                                     Facsimile: 847/673-1228

DATED: January 18, 2021              /s/ Ian M. Silvers
                                     Ian M. Silvers


                                     BRIAN D. CHASE
                                     bchase@bisnarchase.com
                                     JERUSALEM F. BELIGAN
                                     jbeligan@bisnarchase.com
                                     IAN M. SILVERS
                                     bchase@bisnarchase.com
                                     BISNAR|CHASE LLP
                                     1301 Dove Street, Suite 120
                                     Newport Beach, California 92660
                                     Telephone: 949/752-2999
                                     Facsimile: 949/752-2777

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on  January 18, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.


*/s/ Michael L. Fradin*

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GABRIEL RODRIGUEZ and SARAH GIESMAN, | ) ) | CASE NO. 2:18-cv-01123 |
| | ) | |
| *Plaintiffs,* | ) ) | JUDGE ALGENON L. MARBLEY Magistrate Judge Chelsey M. Vascura |
| | ) | |
| v. | ) | |
| | ) | |
| LIFE TIME FITNESS, INC., *et al.,* | ) | |
| | ) | |
| *Defendants* | ) | |

## JOINT STIPULATION OF SETTLEMENT AND RELEASE

WHEREAS, Plaintiffs Gabriel Rodriguez and Sarah Giesman filed a civil action on or about September 26, 2018, individually and on behalf of all other allegedly similarly-situated persons, against Defendant Life Time Fitness, Inc., a Minnesota corporation ("Life Time") in the Southern District of Ohio, Case No. 2:18-cv-01123 (the "Action"). Whereas opt-in Plaintiffs Tyler Everett and Joseph Rosales later consented to join the Action as plaintiffs. Collectively Gabriel Rodriguez Sarah Giesman, Tyler Everett and Joseph Rosales are referred to as "Plaintiffs."

WHEREAS, on July 29, 2020, the representatives of Plaintiffs and Defendant attended a settlement conference (the "mediation") with a mutually-agreed upon private mediator, Michael Russell. In light of the Covid-19 pandemic, the Parties conducted the mediation virtually. Following the July 29, 2020 mediation, the Parties remained engaged with the mediator in an effort to come to an agreed-upon resolution of the Action and have come to a resolution.

WHEREAS, beginning in December 2018, Life Time began the process of eliminating the "recoverable draw" against commissions element of Personal Trainers' ("PTs'") pay; and WHEREAS this "recoverable draw" against commissions element of PTs' pay was the source of the confusion that led to this and previous litigation brought by counsel for Plaintiffs, and WHEREAS this process was completed for all PTs by March 2019.

WHEREAS, it is the desire of the Parties to fully, finally, and forever memorialize, settle, compromise, and discharge all disputes and claims that have been brought in the Action arising out of the facts alleged or that reasonably arise out of the facts alleged in this Action, *i.e.,* the alleged practices set forth in the pleadings in the Action.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth herein, the Parties enter into this Joint Stipulation of Settlement and Release (hereinafter "Settlement Agreement"), subject to the Court's approval, as follows:

1

1. Definitions:

   a. The "Settlement Class" or the "Class" consists of all current or former employees of any Defendant who work or worked as Personal Trainers ("PTs") or any similar position in the state of Ohio between November 16, 2016 and April 13, 2019 (the "Relevant Period"). These individuals have been identified in the class list provided by Defendants to Class Counsel.

   b. "Class Member" means an individual within the foregoing Class.

   c. "Releasees" refers to and includes Defendant, its present and former subsidiaries, divisions, parent companies, holding companies, stockholders, shareholders, officers, directors, employees, agents, servants, representatives, attorneys, insurers, affiliates, and the successors, heirs and assigns of any such entity or person, as well as any individual that could be included within the definition of "employer" under either the Fair Labor Standards Act ("FLSA") or the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code Ann. § 4111.01, et seq. ("Ohio MFWSA") including but not limited to all officers, directors and managers of Defendants in their personal capacities.

   d. The "Parties" refers collectively to Plaintiffs and Defendant.

   e. "Class Counsel" refers to Law Office of Michael L. Fradin and Bisnar Chase LLP.

   f. "Settlement Administrator" means Simpluris, Inc.

   g. "Effective Date" is defined as the later of: (i) the date when the time for appeal has expired; or (ii) the date of the dismissal of an appeal of the Settlement Agreement if filed, or final resolution of any appeal of the Settlement Agreement if an appeal has been filed and not dismissed.

2. This Settlement Agreement is made and entered into by and between the Plaintiffs and the Defendant. This Settlement Agreement is subject to the terms and conditions hereof and to the approval of the Court. Plaintiffs and Defendant hereby agree to fully and finally settle, compromise, and resolve all claims that were or could have been brought in the Action based on the facts pled, on the terms and conditions set forth in this Settlement Agreement.

3. Nothing contained herein, nor the consummation of this Settlement Agreement, is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Defendant or any Releasees. Each of the Parties hereto has entered into this Settlement Agreement with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses. In particular, and without limiting the generality of the foregoing, nothing in this Settlement Agreement shall be offered or construed as an admission of liability, wrongdoing, impropriety, responsibility or fault whatsoever by Defendant or Releasees,

2

who expressly deny any liability, wrongdoing, impropriety, responsibility or fault whatsoever. Life Time maintains that at all times, it has complied with all relevant laws, including the Fair Labor Standards Act and Ohio wage and hour laws, and that it has at all times paid Class Members for all of their hours of work.

4.    Class Counsel have conducted a thorough investigation into the facts of the Action and have diligently pursued investigation and prosecution of Class Members' claims against Defendant. Based on their own independent investigation and evaluation, Class Counsel is of the opinion that the settlement with Defendant for the consideration and on the terms set forth in this Settlement Agreement is fair, reasonable, adequate, and in the best interest of the Class in light of all known facts and circumstances, including the risk of significant delay, the risk of loss or limited recovery, and the defenses asserted by Defendant.

5.    The Settlement Agreement contains and constitutes a full and complete settlement and release (as defined below) by Plaintiffs, which release includes in its effect Defendant and all Releasees.

6.    Subject to Court approval of the Settlement Agreement, and on the terms and conditions set forth in this Settlement Agreement, Defendant will pay and promise as follows:

a.   Defendants will put up a total sum of $425,000 ("Total Settlement Amount") into a Qualified Settlement Fund ("QSF") administered by the Settlement Administrator, from which all Court-approved attorney's fees and costs and service awards will be paid, and against which net amount remaining after those payments ("Net Settlement Fund") Class Members can make claims for payments in exchange for the Releases (as defined below).

b.   Service payments of $7,500 each to Named Plaintiffs Gabriel Rodriguez and Sarah Giesman and of $2,500 each to opt-in Plaintiffs Tyler Everett and Joseph Rosales, subject to Court approval. Service awards, upon Court approval, shall be paid out of the Settlement Fund.

c.   Defendants, through the QSF, will pay to each Class Member who submits a timely claim using the agreed Claim Form (Exhibit C) and fulfills the conditions of the claims procedure specified in this Settlement Agreement, the Payment amounts based on the agreed formula. The formula the Parties will use to determine each Class Member's share of the Net Settlement Fund for Payments will be based on number of weeks worked in the Class Period by the Class Member, divided by the total workweeks of all potential Class Members who could submit claims, and then multiplying this resulting amount by the Net Settlement Amount.

d.   Any Class Member shares that are not claimed by Class Members shall be retained by Defendant.

e. Of the amounts paid to each such Plaintiff and Class Members, 50% will be deemed wages and subject to normal payroll tax withholding and W-2 reporting, and 50% will be deemed non-wage payment for claimed liquidated damages and/or interest, paid without any withholding and subject to reporting as non-employment income reported in Box #3 on IRS Form 1099-MISC.

f. Defendant shall be responsible for all employer-paid and due taxes on the wage portions of this Settlement, including FICA, FUTA and state unemployment, but shall not be liable for any other taxes. This amount shall not be taken from the Total Settlement Amount.

g. Defendant shall be responsible for paying the Settlement Administrator's fees outside of the Total Settlement Amount, as addressed below.

h. Subject to approval by the Court, Defendant agrees to pay to Class Counsel up to $180,000 as attorneys' fees and costs and expenses, in full and complete satisfaction of all claims by Plaintiffs and their counsel for attorneys' fees, costs and expenses of any kind whatsoever. Class Counsel will apply to the Court for payment of said amounts, to be approved by the Court. Defendant and Defendant's counsel will not oppose such a request. The total attorneys' fees and costs actually paid will be as approved by the Court in its Final Order, subject to appellate rights. Class Counsel and Defendant agree that Defendant will make such payment to the Settlement Administrator within 10 days after the deadline for appeal of the Court's final approval of the settlement. Defendant will report the payments to Class Counsel using an IRS Form 1099. The enforceability of this Agreement is not contingent on the amount of attorneys' fees or costs awarded. Without limiting the generality of the foregoing, any dispute regarding the amount of attorneys' fees or costs, and/or any appeal related thereto, shall not affect or delay the finality of this Agreement, and shall not affect or delay the entry of judgment in the Action.

## MUTUAL FULL COOPERATION

7. The Parties agree to fully cooperate with each other to accomplish the terms of this Settlement Agreement, including but not limited to, execution of such documents and to take such other action as may be reasonably necessary to implement the terms of this Settlement Agreement. The Parties shall use their best efforts, including all efforts contemplated by this Settlement Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Settlement Agreement and the terms set forth herein. As soon as practicable after execution of this Settlement Agreement, Class Counsel shall, with the assistance and cooperation of Defendant and its counsel, take all necessary steps to secure the Court's approval of this Settlement Agreement and to obtain a final judgment in the Action upon completion of the terms and conditions of the Settlement Agreement as approved by the Court.

## DUTIES OF THE PARTIES PRIOR TO COURT APPROVAL

8.     Within 14 days of execution of this Settlement Agreement, Plaintiff shall file an Unopposed Motion for Approval of Settlement, Attorneys' Fees and Costs, and Service Awards, that includes a Proposed Approval Order, substantially in the form attached as Exhibit A. Although this will be Plaintiffs' motion and Plaintiffs' responsibility to draft, the parties will cooperate in the preparation of the Motion.

## DUTIES OF THE PARTIES FOLLOWING APPROVAL

9.     Within fourteen (14) days of the Court granting approval of the settlement, Defendant shall provide Plaintiffs and the Settlement Administrator with the Class List containing Class Member names and last known addresses, along with the respective settlement shares of each Class Member calculated by Defendant. The Settlement Administrator will issue the Notices of the Settlement and of the Claims Procedure.

10.   **Settlement Administration.**

a.   Simpluris, Inc. has been selected as the Settlement Administrator.  All settlement administration costs and fees for the Settlement Administrator, including but not limited to the mailing of the Notice and Claim Form to last known addresses, shall be paid by Defendant outside of the Total Settlement Amount.

b.   Defendant will not be obligated at any stage to engage investigative services to locate Class Members, however the Settlement Administrator shall update Class Members' last known mailing address through the National Change of Address program certified by the United States Postal Service and other standard skip trace methods.

c.   The Settlement Administrator will issue the Notice in accordance with this Settlement Agreement and any approval Order within seven (7) days of receiving the Class Member list from Defendants.

d.   The Settlement Administrator shall be responsible for, in addition to any obligations stated herein or otherwise mutually agreed to by the Parties: establishing and maintaining a QSF, distribution of the Notice to Class Members; paying from the QSF the amount of attorneys' fees and costs awarded to Class Counsel; distributing any service payments; the settlement administration process; providing the Parties on a periodic basis with notice of the identity of individuals who timely submitted a Claim, or a Request for Exclusion of the Settlement, or an objection; calculating and disbursing payment for all appropriate taxes to be paid under the settlement, as stated herein as to the source of funds for payment of taxes owed (including the employer-paid and due taxes as addressed above that are paid outside the Total Settlement Amount); complying with all applicable tax reporting

obligations including preparing and filing all applicable tax forms and amendments or modifications required thereto; distribution of the Settlement Checks to the Class Members; and preparing and submitting a final accounting of the Settlement attested to by an Affidavit or Declaration in support of final approval of the settlement.

11. **Notice to the Class Members.**

   a. The Settlement Administrator will send the Court-approved Notice of Class Action Settlement and the Claim Form, substantially in the form attached hereto as Exhibit B, and as approved by the Court (together "Notice"), including any modifications at the direction of the Court, to the Class Members, by first-class mail within the time frame in Paragraph 10(c) above.

   b. Class Members will have fifty (50) days after the Notice is first mailed to submit their Claim Form. Late claims, or claims submitted in a manner that does not comply with the process contained herein, shall not be accepted.

   c. Named Plaintiffs Gabriel Rodriguez and Sarah Giesman and opt-in Plaintiffs Tyler Everett and Joseph Rosales are not required to submit a Claim Form in order to participate in this settlement and receive their Payments, and shall be deemed participants by this Agreement pursuant to the authority designated to Class Counsel.

12. **Claims: Binding Effect**

   a. All Class Members who file a claim will be bound by the final approval order, the judgment, and the releases set forth in this Agreement.

   b. None of the Parties, their counsel, nor any person on their behalf, shall seek to solicit or otherwise encourage anyone to object to the settlement, or appeal from any order of the Court that is consistent with the terms of this settlement, or discourage participation in the settlement claims process; however, Class Counsel may advise class members how to assert their right or provide other advice as required to comply with counsel's ethical obligations.

## POTENTIAL VOIDING OF THE SETTLEMENT AGREEMENT

13. A failure of the Court to make a final approval of any material condition of this Settlement Agreement which effects a fundamental change of the Parties' Settlement shall render the entire Settlement Agreement voidable and unenforceable as to all Parties herein at the option of the party adversely affected thereby. However, neither party may void the Settlement Agreement based on the Court's approval or non-approval of the amount of attorneys' fees or costs, or based on the Court's approval or non-approval of some or all of the Service Awards. The Court's failure to approve Class Counsel's fee and cost request shall not render the

remainder of the Settlement Agreement unenforceable, but any such Order is itself subject to appellate rights which are in no way waived by this Settlement Agreement.

14.     If this Settlement Agreement is voided under the prior paragraphs and the disputed issue is not resolved by the Parties, this Settlement Agreement shall have no force or effect; all negotiations, statements and proceedings related thereto shall be without prejudice to the rights of any party, all of whom shall be restored to their respective positions in the lawsuit prior to the settlement; and neither this Settlement Agreement nor any ancillary documents, actions or filings the Parties agreed to shall be admissible or offered into evidence in the lawsuit or any other action for any purpose.

## SETTLEMENT AGREEMENT RELEASE
## AND PAYMENT PROCESSES

15.     This Agreement becomes effective on the Effective Date.

16.     Upon the Release Effective Date, (and except as to such rights or claims as may be created by this Settlement Agreement), each Class Member who submits a Claim Form in compliance with the procedures in the Notice shall be deemed to have agreed to and accepted the State Law Release and FLSA Release as stated below and in the Notice.

17.     Upon the Release Effective Date, (and except as to such rights or claims as may be created by this Settlement Agreement), each Class Member who timely submits a Claim Form in compliance with the procedures in the Notice shall be deemed to have agreed to and accepted the FLSA Release.

18.     "State Law Release" means that the individual deemed covered by that release under this Settlement Agreement fully releases and discharges Defendant and Releasees from any and all claims, debts, penalties, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, action or causes of action of whatever kind or nature, whether known or unknown, expressly limited to wage and hour claims under Ohio law for unpaid overtime for hours worked as PTs, and any damages, penalties, interests, fees or costs derivative from those wage and hour claims available under Ohio law, that were alleged in the Action or that reasonably arise out of the acts alleged in the Action, which includes all claims under Ohio law for payment for time worked as PTs, and including associated liquidated damages, interest, and penalty claims that were asserted or could have been asserted in this Action under Ohio law between November 16, 2016 and April 13, 2019. This release includes all claims for unpaid wages as alleged in the Complaint including, but not limited to claims for alleged off-the-clock work and claims for alleged failure to pay minimum wage or overtime, under Ohio's state minimum wage laws, state wage payment and collection laws, state overtime statutes, state common law and unjust enrichment, and pursuant to wage contract claims. Class Members do not by this release waive any claim wholly unrelated to the Ohio wage and hour subject matter, specifically including those covered by workers' compensation, unemployment compensation or discrimination law, or any other claims that cannot be released by law.

19.     "FLSA Release" means that the individual deemed covered by that release under this Settlement Agreement fully releases and discharges Defendant and Releasees from any and all claims, debts, penalties, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, action or causes of action of whatever kind or nature, whether known or unknown, expressly limited to wage and hour claims under the FLSA for unpaid minimum wage or overtime, and any damages, penalties, interests, fees or costs derivative from those wage and hour claims available under the FLSA, that were specifically alleged in the Action or that reasonably arise out of the factual predicate of the acts alleged in the Action, which includes all claims under the FLSA for payment for time worked as PTs, and including associated liquidated damages, interest, and penalty claims derivative of those claims for payment for time worked as PTs that were asserted or could have been asserted in this Action based on the factual predicate alleged in the Complaint under the FLSA between November 16, 2016 and April 13, 2019.

20.     **Distribution of Settlement Payments to Class Members.**

   a.   Defendant shall fund the QSF with the amounts required under this Settlement Agreement within fourteen (14) calendar days of the Settlement's Effective Date, and the Settlement Administrator shall mail payments by check to all participating Plaintiffs and Class Members within ten (10) calendar days of the Settlement's Effective Date as defined above in paragraph 1 and issue Court-approved payments from the QSF for attorney's fees, costs, and service payments.

   b.   Class Members shall have one hundred twenty (120) calendar days after the date of mailing to cash their settlement checks. Any uncashed check amounts shall be sent by the Claims Administrator back to the State's Unclaimed Property Division.

## PARTIES' AUTHORITY

21.     The signatories hereby represent that they are fully authorized to enter into this Settlement Agreement and bind the Parties hereto to the terms and conditions hereof.

## ENFORCEMENT ACTIONS

22.     This Settlement Agreement is fully enforceable in the U.S. District Court for the Southern District of Ohio before the Honorable Algenon L. Marbley or such judge as may be designated in his stead by the procedures of the Court, who shall retain jurisdiction to enforce this agreement.

## NOTICES

23.     Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder by the Parties to this Settlement Agreement shall be in writing and shall be addressed as follows:

To Plaintiffs:

Michael L. Fradin
LAW OFFICE OF MICHAEL L. FRADIN
8 N. Court St. Suite 403
Athens, Ohio 45701
Phone: 847-986-5889

Brian D. Chase
Jerusalem F. Beligan
BISNAR CHASE LLP
1301 Dove Street, Ste. 120
Newport Beach, CA 92660
Phone: 949-752-2999

To Defendant:

Eric R. Magnus
**JACKSON LEWIS, P.C.**
1155 Peachtree St., NE
Suite 1000
Atlanta, GA 30309
Tel: (404) 525-8200
Fax: (404) 525-1173
magnuse@jacksonlewis.com

## CONSTRUCTION

24.     The Parties hereto agree that the terms and conditions of this Settlement Agreement are the result of lengthy, intensive, arm's length negotiations between the Parties and that the Settlement Agreement shall not be construed in favor of or against any Party by reason of the extent to which any party or his or its counsel participated in the drafting of this Settlement Agreement.

## CAPTIONS AND INTERPRETATIONS

25.     Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend or describe the scope of this Settlement Agreement or any provision hereof. Each term of this Settlement Agreement is contractual and not merely a recital.

## MODIFICATION

26.     This Settlement Agreement may not be changed, altered, or modified except in writing and signed by the Parties hereto, and approved by the Court, except that the Parties may mutually agree to reasonable extensions of time that do not affect any effective dates. This

9

Settlement Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties hereto.

## INTEGRATION CLAUSE

27.     This Settlement Agreement constitutes the entire agreement between the Parties relating to the settlement and transaction contemplated hereby, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a party or such party's legal counsel, agreed to by the Parties in this matter, are merged herein. No rights hereunder may be waived except in writing.

## NO PRIOR ASSIGNMENTS

28.      This Settlement Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators and successors.  The Parties hereto represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged except as set forth herein.

## SIGNATORIES

29.     It is agreed that because the Class Members are so numerous, it is impossible or impractical and not required to have each Class Member execute this Settlement Agreement. The Notice will advise all Class Members of the binding nature of the release as applicable under this Settlement Agreement and such shall have the same force and effect as if this Settlement Agreement were executed by each Class Member.

## PUBLICITY

30.     Parties shall not issue any press release about the Settlement Agreement or its terms.  The Parties shall respond to media inquiries only with the acknowledgment that "the matter was amicably resolved" and by directing the inquiring media personnel to the publicly filed documents in the Action for reference.

## COUNTERPARTS

31.     This Settlement Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Settlement Agreement, which shall be binding upon and effective as to all Parties.  Signatures sent by facsimile machine, scanned signatures in Portable Document Format sent by email, or by electronic signature through DocuSign or SignNow shall be deemed original signatures.

Dated: ___12/10/20___

_GC/SVP_, on behalf of Defendant Life Time
Fitness, Inc.

Dated: _____

_____
Gabriel Rodriguez, Plaintiff

Dated: _____

_____
Sarah Giesman, Plaintiff

Dated: _____

_____
Tyler Everett, opt-in Plaintiff

Dated: _____

_____
Joseph Rosales, opt-in Plaintiff

Dated: _____                    _____, on
                                            behalf of Defendant Life Time Fitness, Inc.

Dated: **11/7/2020** _____                 _____
                                            Gabriel Rodriguez (Nov 7, 2020 12:43 EST)
                                            Gabriel Rodriguez, Plaintiff

Dated: _____                    _____

                                            Sarah Giesman, Plaintiff

Dated: _____                    _____

                                            Tyler Everett, opt-in Plaintiff

Dated: _____                    _____

                                            Joseph Rosales, opt-in Plaintiff

11

Dated: _____          _____, on
                                         behalf of Defendant Life Time Fitness, Inc.

Dated: _____          _____
                                         Gabriel Rodriguez, Plaintiff

Dated: __11/7/2020_____          *Sarah Giesman*
                                         Sarah Giesman (Nov 14, 2020 10:01 EST)
                                         _____
                                         Sarah Giesman, Plaintiff

Dated: _____          _____
                                         Tyler Everett, opt-in Plaintiff

Dated: _____          _____
                                         Joseph Rosales, opt-in Plaintiff

11

Dated: _____        _____, on
                                     behalf of Defendant Life Time Fitness, Inc.

Dated: _____        _____
                                     Gabriel Rodriguez, Plaintiff

Dated: _____        _____
                                     Sarah Giesman, Plaintiff

Dated: __11/05/2020__                *Tyler S. Everett*
                                     Tyler s. Everett (Nov 5, 2020 15:45 EST)
                                     _____
                                     Tyler Everett, opt-in Plaintiff

Dated: _____        _____

                                     Joseph Rosales, opt-in Plaintiff

Dated: _____     _____, on
                                   behalf of Defendant Life Time Fitness, Inc.

Dated: _____     _____

                                   Gabriel Rodriguez, Plaintiff

Dated: _____     _____

                                   Sarah Giesman, Plaintiff

Dated: _____     _____

                                   Tyler Everett, opt-in Plaintiff

Dated: **12/03/2020**              _Joseph Rosales_
                                   Joseph Rosales (Dec 3, 2020 14:44 EST)
                                   _____
                                   Joseph Rosales, opt-in Plaintiff

# Exhibit A
# Approval Order

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GABRIEL RODRIGUEZ and SARAH GIESMAN, | ) | CASE NO. 2:18-cv-01123 |
| | ) | |
| | ) | JUDGE ALGENON L. MARBLEY |
| *Plaintiffs,* | ) | Magistrate Judge Chelsey M. Vascura |
| | ) | |
| v. | ) | |
| | ) | |
| LIFE TIME FITNESS, INC., *et al.,* | ) | |
| | ) | |
| *Defendants* | ) | |

**[PROPOSED] ORDER APPROVING SETTLEMENT AND**
**DISMISSAL OF LAWSUIT WITH PREJUDICE**

After a review of the Parties' Joint Motion for Approval of Settlement and Stipulation of Dismissal with Prejudice, the Settlement Agreement, and the Declarations of Plaintiffs' Counsel, the Court is satisfied that the settlement reached is a "fair and reasonable resolution of a bona fide dispute" under the Fair Labor Standards Act. *See, e.g., Dillworth et. al. v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *9 (N.D. Ohio Mar. 8, 2010); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982); 29 U.S.C. § 216.

It is therefore this ____ day of _____ 2020 Ordered and Adjudged as Follows:

1. The Proposed Settlement is APPROVED, including, but not limited to, the Service Awards and attorneys' fees and costs to Plaintiffs' Counsel.

2. That for purposes of settlement a FLSA collective action is certified, consisting of the following:

> The "Settlement Class" or the "Class" consists of all current or former Personal Trainers ("PTs") or any similar position in the state of Ohio between November 16, 2016 and April 13, 2019 (the "Relevant Period".

13

These individuals have been identified in the class lists provided by Defendant to Class Counsel.

ORDERED that:

- All capitalized terms not otherwise defined in this Order shall have the same meaning ascribed to them in the Parties' Settlement Agreement;

- Simpluris will serve as "Settlement Administrator" in providing notice, claim process and administration services under the Settlement Agreement;

- Defendant shall within fourteen (14) days from the date of this Order provide Plaintiffs and the Settlement Administrator with the Class List containing Class Member names and last known addresses;

- Within seven (7) days of receiving the Class Member list from Defendant, the Settlement Administrator will shall send by first-class mail the Notice of Proposed Settlement (including Claim Form) to all Class Members;

- Class Members shall submit to the Settlement Administrator claims as set forth in the Notice of Proposed Settlement (including Claim Form), which were jointly proposed by the Parties and filed with the Court;

- Named Plaintiffs are appointed as representatives for the Settlement Class;

- Law Office of Michael L. Fradin and Bisnar Chase LLP are approved as Class Counsel for the Settlement Class;

ORDERED that the form and content of the Notice of Proposed Settlement and the Claim Form set forth in the Motion for Preliminary Approval are adequate, proper, comport with Due Process, and they are hereby approved and authorized for distribution to Class Members;

ORDERED that Counsel for the Parties are hereby authorized to jointly use all reasonable procedures in connection with approval and administration of the settlement that are not materially inconsistent with this Order or the Settlement Agreement, including making, without further approval of the Court, minor changes to the form or content of the Notice, moderate extensions of time that do not alter effective dates, and minor changes to other exhibits that they jointly agree are reasonable or necessary.

_____
Honorable Algenon L. Marbley
United States District Judge

# Exhibit B
# Notice

**U.S DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO**

Rodriguez, et al. v. Life Time Fitness, Inc., No. 2:18-cv-01123 (S.D. Ohio) (the "Lawsuit")

*A federal Court authorized this notice. This is not a solicitation from a lawyer.*

**NOTICE OF CLASS ACTION SETTLEMENT AND SETTLEMENT HEARING**

You are receiving this Notice because you are a current or former employee of Life Time Fitness, Inc. ("Life Time") who, according to Life Time's records, worked as a Personal Trainer ("PT") within the period from November 16, 2019 and April 13, 2019 (the "relevant period"). This Notice involves settlement of the Lawsuit, which alleged that PTs were not paid for all hours worked, and as a result were denied minimum wage and overtime wages in violation of the federal Fair Labor Standards Act and Ohio state laws including the Ohio Minimum Fair Wage Standards Act, and Ohio Rev. Code Ann. § 4111.01, et seq.  Life Time maintains that at all times, it has complied with all relevant laws, including the Fair Labor Standards Act and Ohio wage and hour laws, and that it has at all times paid Class Members for all of their hours of work.

You should only file a consent to participate if you believe you worked off the clock as a PT.  This is because Defendant contends that all PTs that reported all of their working time consistent with company policy have already been paid for all compensable time.

A proposed Settlement has been reached in this Lawsuit that affects your rights. The purpose of this Notice is to inform you of the settlement terms and your rights and options in connection with the Settlement.  If the Settlement is finally approved by the Court, it will resolve all claims in the Lawsuit.

If you timely sign and return the Claim Form in compliance with the procedures in this Notice and thereby accept your payment by opting in and accepting the Release, you will receive a payment in exchange for your release of claims.

If you do not timely sign and return the Claim Form, you will not receive a payment, and you will not release any claims.

| YOUR LEGAL RIGHTS AND OPTIONS | |
|---|---|
| **FILL OUT THE CLAIM FORM** | **Fill out the settlement Claim Form to receive your payment. Agree to the release of FLSA and certain state law claims against Defendant.** <br><br> If you wish to receive your payment, and agree to be bound by the Release described herein, you must complete, sign and return the attached Claim Form, which must be faxed or mailed to the Settlement Administrator, P.O. Box 26170, Santa Ana, CA 92799, fax: 1 (714) 824-8591.  The Claim Form must be received by the Settlement Administrator or post-marked on or before _____, 2020. |
| **DO NOTHING** | **If you do not fill out a claim form, you will not participate in the settlement or release any claims.** |

| WHAT THIS NOTICE CONTAINS |
|---|

17

Why did I get this notice? ...................................................................................[insert page #s]

What is this lawsuit about? ..................................................................................[insert page #s]

What are the settlement terms? ...........................................................................[insert page #s]

What if my address changes ................................................................................[insert page #s]

Where do I find more information? .....................................................................[insert page #s]

Who do I contact if I have questions? .................................................................[insert page #s]

Time Sensitive Claim Form ................................................................................[insert page #s]

## Why did I get this Notice?

You are part of a group of employees that worked as a Personal Trainer ("PT") at one of Defendant's clubs located in the State of Ohio, called a Class, that were the subject of this Lawsuit. On _____ _____, 2020, the Court overseeing this case approved a Settlement and ordered that this Notice be sent to all current and former employees in the Class. This Notice explains what you can get from the Settlement and what rights are affected.

You are entitled to receive a payment that will only be paid to you if you timely return a signed Claim Form, a copy of which is enclosed with this Notice. Defendant will not and cannot retaliate against you for participation or non-participation in this settlement.

**If you are receiving this Notice, you are entitled to submit a Claim Form in order to receive a payment under the Settlement.**

## What is this Lawsuit about?

This Lawsuit alleges that, in violation of federal and Ohio law, Life Time failed to pay PTs for all hours worked and that a result, such PTs have not been paid overtime wages to which they were entitled under the law. The Named Plaintiffs allege that Life Time failed to record and pay for all hours worked by PTs. The Lawsuit sought, on your behalf, damages from Life Time for the alleged unpaid overtime wages, liquidated damages and other applicable penalties or interest, and payment by Defendant of Plaintiffs' attorneys' fees and expenses.

Life Time asserts that it has required PTs to report all hours worked, that all PTs have been paid for all hours worked and that it has complied with federal and state law. Life Time denies any liability or wrongdoing of any kind. Nonetheless, to avoid the costs and uncertainty of litigation, Life Time has agreed to create a Settlement Fund from which you may claim a payment, which will be paid if you timely submit a signed Claim Form.

Judge Algenon L. Marbley of the United States District Court for the Southern District of Ohio is overseeing this lawsuit. The lawsuit is known as *Rodriguez, et al. v. Life Time Fitness, Inc.*, No. 2:18-cv-01123, U.S. District Court for the Southern District of Ohio.

| What are the Settlement terms? |
| --- |

The Settlement Agreement requires that Defendant create a $425,000 Settlement Fund from which the amount remaining after payment of Court-approved attorney's fees, costs, and any service award to Plaintiffs (the "Net Settlement Fund"), will be made available to all Class Members.   Each Class Member's share of the settlement will be calculated using a formula that will take the number of weeks worked in the Class Period by the Class Member, divided by the total workweeks of all potential Class Members who could submit claims, and then multiply this resulting amount by the Net Settlement Amount to determine the Class Member's share of the settlement. In addition, Defendant has agreed to pay a service award of $7,500 each to Named Plaintiffs Gabriel Rodriguez and Sarah Giesman and of $2,500 each to opt-in Plaintiffs Tyler Everett and Joseph Rosales for their efforts on your behalf resulting in this settlement.  This service award will be paid out of the Settlement Fund.

**How can I claim my payment?**

You must fill out the Claim Form that is attached to this Notice and return it by fax or mail to the Settlement Administrator, P.O. Box 26170, Santa Ana, CA 92799, fax: 1 (714) 824-8591.  The Claim Form must be received by the Settlement Administrator or post-marked on or before _____, 2020. If you do not timely submit a signed Claim Form, you will not receive a payment.

A check for your share of the Settlement will be sent to you at your most current address available at the time of payment, so it is important that you notify the Settlement Administrator if you move or your address has changed. You are responsible for notifying the Settlement Administrator of your current address and contact information.

**How long do I have to cash my check?**

Your Settlement check will have a date on it.  The settlement checks will be valid for one hundred twenty (120) days, unless the check is returned due to a bad address, in which case, the check will be reissued. You will have 120 days from that reissue date to cash your check.

If you lose your check or it is damaged in the mail, contact the Settlement Administrator.  You may be able to have it reissued, provided you ask within the 120 day time period.

If you do not cash your check within 120 days of the date it was issued, your check will be void and will be returned to Life Time.

**Will I owe any taxes?**

The settlement payment amount you receive will be divided between one-half wage income subject to normal payroll tax withholding and W-2 reporting, and one-half non-wage income not subject to withholding and reported by IRS Form 1099-MISC. The payroll deductions will be taken out of the one-half wages portion of your settlement check. If you have questions about the tax consequences of the payment to you, you should consult with an accountant or other tax advisor. Class Counsel cannot provide tax advice.

**What rights am I giving up by submitting a Claim Form?**

If you submit a Claim Form to receive your payment, you agree to the following FLSA Release, in addition to the State Law Release described below:

"FLSA Release" means that each person accepting their payment under the Settlement Agreement agrees to fully release and discharge Defendant and Releasees (their related entities and individuals) from any and all claims, debts, penalties, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, action or causes of action of whatever kind or nature, whether known or unknown, expressly limited to wage and hour claims under the FLSA for unpaid minimum wage or overtime, and any damages, penalties, interests, fees or costs derivative from those wage and hour claims available under the FLSA, that were specifically alleged in the Action or that reasonably arise out of the factual predicate of the acts alleged in the Action, which includes all claims under the FLSA for payment for time worked as PTs, and including associated liquidated damages, interest, and penalty claims derivative of those claims for payment for time worked as PTs that were asserted or could have been asserted in this Action based on the factual predicate alleged in the Complaint under the FLSA between November 16, 2019 and April 13, 2019.

"State Law Release" means that the individual deemed covered by that release under this Settlement Agreement fully releases and discharges Defendant and Releasees from any and all claims, debts, penalties, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, action or causes of action of whatever kind or nature, whether known or unknown, expressly limited to wage and hour claims under Ohio law for unpaid overtime for hours worked as PTs, and any damages, penalties, interests, fees or costs derivative from those wage and hour claims available under Ohio law, that were alleged in the Action or that reasonably arise out of the acts alleged in the Action, which includes all claims under Ohio law for payment for time worked as PTs, and including associated liquidated damages, interest, and penalty claims that were asserted or could have been asserted in this Action under Ohio law between November 16, 2019 and April 13, 2019. This release includes all claims for unpaid wages including, but not limited to claims for alleged off-the-clock work and claims for alleged failure to pay minimum wage or overtime, under Ohio's state minimum wage laws, state wage payment and collection laws, state overtime statutes, state common law and unjust enrichment, and pursuant to wage contract claims. Class Members do not by this release waive any claim wholly unrelated to the Ohio wage and hour subject matter, specifically including those covered by workers' compensation, unemployment compensation or discrimination law, or any other claims that cannot be released by law.

You are not releasing or waiving any claim wholly unrelated to wage and hour claims such as those covered by workers' compensation law, state or federal discrimination laws, or state or federal unemployment compensation laws.

Your release of claims will be only effective if you submit a claim form.

If you do not submit a Claim Form, you will not receive your payment but you will not release any claims.

**Do I have to pay any attorneys or other costs?**

No. Your settlement share will not be reduced in any way by the amounts, if any, awarded to the attorneys in the Lawsuit to be paid by Defendant.

As part of the settlement, the Court appointed Law Office of Michael L. Fradin and Bisnar Chase LLP as the attorneys for the Class Members in this case ("Class Counsel").

Under the Settlement, Defendant is required to pay Class Counsel in this case. The Settlement provides that Class Counsel may request that the Court award them up to $180,000 as payment for the attorneys' fees and costs and expenses that they expended in prosecuting this Lawsuit on behalf of the Class Members.

Any payments to the attorneys must be approved by the Court. To date, Class Counsel has been prosecuting the Lawsuit, without being paid, while advancing the costs and expenses of litigation on behalf of the Class Members.

The Settlement is being administered by the Settlement Administrator, Simpluris, Inc. Defendant will pay the costs of the Settlement Administrator. The address and contact information for counsel for the Parties is:

| Class Counsel: | Defense Counsel: |
|---|---|
| Michael L. Fradin | Eric R. Magnus |
| LAW OFFICE OF MICHAEL L. FRADIN | **Jackson Lewis, P.C.** |
| 8 N. Court St. Suite 403 | 1155 Peachtree Street |
| Athens, Ohio 45701 | Suite 1000 |
| Skokie, IL 60076 | Atlanta, GA 30306 |
| Phone: 847-986-5889 | magnuse@jacksonlewis.com |
| | Tel: (404) 525-8200 |
| Brian D. Chase | Fax: (404) 525-1173 |
| Jerusalem F. Beligan | |
| BISNAR CHASE LLP | |
| 1301 Dove Street, Ste. 120 | |
| Newport Beach, CA 92660 | |
| Phone: 949-752-2999 | |

**Where do I find more information?**

This Notice is only a summary of the Lawsuit and the Settlement. For a more detailed statement of the Lawsuit or Settlement, you may refer to the pleadings, the Settlement Agreement, and the other papers filed in the Case, which may be inspected at the Office of the Clerk of the U.S. District Court for the Southern District of Ohio [COURT ADDRESS], during regular business hours of each court day. You also may obtain copies of this Notice and/or the Settlement Agreement or further information regarding the Settlement from the Settlement Administrator [toll free number]. Please direct all inquiries regarding the settlement, procedures, or address updates to the Settlement Administrator who has been retained to address those inquiries.

**Who do I contact if I have further questions?**

All questions or inquiries regarding this Notice and/or Settlement, including the amounts estimated to be payable to you if the Settlement is approved, settlement procedures or deadlines, or address updates, should be directed to the Settlement Administrator P.O. Box 26170, Santa Ana, CA 92799, Telephone: 1 (888) 369-3780.

If your question involves a request for legal advice, you may contact Class Counsel at the phone numbers or addresses listed in this Notice.

**PLEASE DO NOT CONTACT THE COURT OR THE JUDGE WITH ANY INQUIRIES.**

# EXHIBIT C
# CLAIM FORM

**U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO**
<u>Rodriguez, et al. v. Life Time Fitness, Inc., et al</u>, No. No. 2:18-cv-01123 (S.D. Ohio) (the "Lawsuit")

*A federal Court authorized this Claim Form. This is not a solicitation from a lawyer.*

**<u>TIME SENSITIVE CLAIM FORM</u>**

Name
Address
City, State, Zip

If your name or address is different from those shown above, print the corrections on the lines above and to the right.

**TO RECEIVE YOUR PAYMENT FROM THIS SETTLEMENT, YOU MUST COMPLETE AND SUBMIT THIS CLAIM FORM BY:**

**[INSERT DATE]**

**IF YOU DO NOT SUBMIT IT BY [INSERT DATE], YOUR CLAIM WILL BE REJECTED.**

**YOU MUST <u>SIGN</u> AND <u>RETURN</u>  THIS CLAIM FORM IN THE SELF ADDRESSED POSTAGE PRE-PAID ENVELOPE INCLUDED, OR MAIL IT TO THE ADDRESS BELOW BY _____.  YOU MAY ALSO SUBMIT YOUR CLAIM FORM TO THE FAX NUMBER IDENTIFIED BELOW:**

**Life Time Settlement Administrator**
P.O. Box 26170
Santa Ana, CA 92799

I.   <u>INSTRUCTIONS</u>

1.      You must <u>sign</u> and <u>return</u> this Claim Form by fax or mail in order to claim your Payment from this Settlement.  Your Claim Form must be received by the Settlement Administrator or postmarked on or before the date above, or it will be rejected.

2.      If you move, please send your new address to the address shown above.  It is your responsibility to keep a current address on file at the address shown above.

3.      If you sign and return this Claim Form and it is either received or postmarked on or before the date above, then provided the Court approves the settlement, you will be sent a check for the applicable amount, which was calculated under the formula in the Settlement Agreement based on the weeks you worked in the Class period divided by the total number of weeks worked by all Class Members in that time and then this amount is multiplied by the Net Settlement Amount to determine the amount of your check.

4.       Submitting a Claim Form will not impact your employment with Life Time in any way. Life Time will not discriminate or retaliate against you in any way for your decision on claiming your payment from this settlement.

**Yes, I wish to receive my Payment as part of this settlement and this case.**  My signature constitutes my agreement to release claims under the Fair Labor Standards Act as detailed in the Notice, in addition to the State Law Release detailed in the Notice:

_____          _____
(Sign your name here)                                        (Date)


_____          _____
Print Your Name Legibly Here                     Former Names (if any)

(_____) _____          (_____) _____
Area Code       Cell Phone #                        Area Code       Other Phone #


_____          _____
Email address  (optional)                            _____
                                                                   Home address


_____
Social Security Number (if available)

4838-1462-8043, v. 3

24