IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **GABRIEL RODRIGUEZ AND SARAH GIESMAN**, *et al.*, | :<br>:<br>: |
| **Plaintiffs,** | :  Case No. 2:18-cv-01123<br>: |
| v. | :  Chief Judge Alegenon L. Marbley<br>: |
| **LIFE TIME FITNESS**, *et al.*, | :  Magistrate Judge Chelsey M. Vascura<br>: |
| **Defendants.** | :<br>:<br>: |

## **OPINION & ORDER**

### I.    INTRODUCTION

This matter is before the Court on parties' Motion for Settlement of FLSA Settlement pursuant to § 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), as well as Ohio wage-and-hour statutes. (ECF No. 44). For the reasons stated below, this Court **GRANTS** the parties' motion for final approval. (*Id.*).

### II.    BACKGROUND

On September 26, 2018, Plaintiffs Gabriel Rodriguez and Sarah Giesman filed this matter as a collective action under the FLSA, on behalf of themselves and other non-exempt Personal Trainers ("PT"), asserting off-the-clock work allegations under the FLSA and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"). (ECF No. 1). Opt-in Plaintiffs Tyler Everett and Joseph Rosales later consented to join the lawsuit as Plaintiffs.

Plaintiffs alleged that they and other similarly situated employees were required by their employer, Defendant Life Time Fitness, to perform unpaid work off-the-clock, including attending mandatory meetings, completing tutorials, quizzes, videos and certifications, training courses, and

1

cleaning the equipment in the fitness center. As a result, they alleged they were not paid properly for all hours worked, including at least 1.5 times the minimum wage.

On July 29, 2020, the Parties held a mediation with Michael Russell, but were unable to reach an agreement to settle the lawsuit. (ECF No. 44 at 11). The Parties continued to engage in further settlement negotiations, with the assistance or Mr. Russell, ultimately resulting in the instant motion.

### III. LAW & ANALYSIS

As a general rule, "[t]he FLSA's provisions are mandatory and, except as otherwise provided by statute, are generally not subject to being waived, bargained, or modified by contract or by settlement." *Kritzer v. Safelite Solutions, LLC*, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012). One exception is when a court reviews and approves a settlement agreement in a private action for back wages under 29 U.S.C. § 216(b). *Id.* The Court's role in approving an FLSA settlement, and presumably an Ohio wage and hour settlement, "is comparable to that of a court in a settlement of a class action brought pursuant to Fed. R. Civ. P. 23." *See id.* (quoting *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, *5 (N.D. Ohio Mar. 8, 2010)). Hence, the Court must ensure that there is a bona fide dispute between the parties and that the settlement is a product of arms-length negotiation that was fair, reasonable, and adequate. *See id.* at *5-6.

#### A. Whether there was a Bona Fide Dispute Between the Parties

The requirement that there be a bona fide dispute between the parties stems from the need to ensure the parties are not negotiating around the FLSA's requirements concerning wages and overtime. *Id.* at *5. Plaintiffs allege that they and other similarly situated PTs were required by Defendant to perform unpaid work off-the-clock. Defendant denies that it engaged in any unlawful

or improper conduct, including permitting any off-the-clock work and denies all liability and damages of any kind to anyone regarding Plaintiffs' claims. (Silvers Dec. ¶ 20).

The Parties also dispute whether collective treatment of Plaintiffs' FLSA claims was appropriate. Defendant filed a Motion to Strike Class Allegations, which was opposed by Plaintiffs. Defendant continues to deny that the Lawsuit could be litigated on a collective action basis. Absent settlement, Defendant would oppose a Motion for Conditional Certification and if the Court were to deny Plaintiffs' Motion for Certification or granted Defendant's decertification motion, the 287 Class Members who will benefit from this settlement would need to file individual lawsuits in order to proceed with their individual claims.

This lawsuit has been pending for over two years, and was resolved only after extensive discovery, motion practice, and mediation. *See Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007) ("The participation of an independent mediator in the settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."). Given the above, the Court is satisfied that the Settlement Agreement is not an attempt to negotiate around the FLSA's mandatory requirements of compensating employees for unpaid wages.

### B. Whether Negotiations were Fair, Reasonable, and Adequate

In determining whether a proposed FLSA settlement is fair, reasonable, and adequate, a district court is required to consider and balance several factors: (a) Plaintiff's likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement; (b) the complexity, expense, and likely duration of the litigation; (c) the stage of the proceedings and the amount of discovery completed; (d) the judgment of experienced trial counsel; (e) the

nature of the negotiations; (f) the objections, if any, raised by the class members; and (g) the public interest. *Kritzer*, 2012 WL 1945144, at *6.

As detailed above, Plaintiffs allege that they and other similarly situated employees were required to perform unpaid work off-the-clock, and as a result, were not properly paid for all hours worked (including that they were not paid at least 1.5 times the minimum wage as required by 7(i)). As between the four Plaintiffs, they worked at one point or another from 2007 through the end of the relevant time period, they were able to give reasonable estimates of the hours worked off the clock per week by Class Members. (Silvers Dec. ¶ 27). Based on this, Plaintiff's expert analyzed the sampling of 41 putative Class Members plus all four Plaintiffs based on 10 hours of assumed off the clock work per week by each Class Member. (*Id.*).

Defendant disputes that anyone in the Settlement Class worked off the clock at all and contends that claiming even five hours off the clock in a week would be an excessive assumption. (*Id.*) Plaintiff's expert included the 10 hours off the clock work per week and compared this to the requirements of § 7(i) of the FLSA to determine whether a violation occurred each pay period and if so, the amount owed. (Silvers Dec. ¶ 29). Based on that analysis, Plaintiff's expert calculated that for the FLSA claims, there was $622,026 in wages owed to Settlement Class, meaning the settlement would represent about 67.89% of the maximum available backpay. (*Id.*). Plaintiffs also alleged liquidated damages would be owed. (Silvers Dec. ¶ 29). At most, this would double the above amount to $1,244,053, meaning the settlement would then represent about 34.16% of the maximum available backpay and penalties. (*Id.*) Defendant, however, has and would contend that liquidated damages are not recoverable here based on the lack of willfulness, including that Defendant contends there is no evidence it encouraged employees to work off the clock and, to the extent they worked off the clock, it was in violation of Defendant's policies. (*Id.*)

As such, this Court finds that the balance of factors weighs in favor of approving the Settlement Agreement.

### 1. Likelihood of Success

The most important factor the Court must consider when approving an FLSA settlement "is the plaintiffs' probability of success on the merits, particularly when weighed against the recovery provided in the proposed settlement agreement." *Id.* The lower the likelihood of success, the more desirable a settlement. *Id.*

Here, the parties disagree about the merits of Plaintiffs' claims and the viability of Defendant's various defenses. While Plaintiffs allege that Defendant failed to pay them overtime for the time worked in excess of forty hours per week, Defendants dispute any liability. Plaintiffs argue that if forced to litigate further, the parties would engage complex, costly, and protracted litigation, and the possibility of Plaintiffs' recovery would face the following challenges: (1) the strength of defenses; (2) risk of certification being denied; (3) overcoming dispositive motions; (4) trial or prevailing on only some claims; (5) that the amount of off the clock work would be shown to be less than 10 hours per week; (6) that no liquidated damages would be awarded; and (6) chances of a favorable verdict reversed on appeal. (*Id.*)

This factor also weighs in favor of approval.

### 2. Complexity and Expense of Litigation

The second factor the Court must consider is the complexity and expense of potential litigation. Here, Plaintiffs faced multiple, and potentially expensive, hurdles to victory. Some of these hurdles include overcoming a motion to dismiss, a motion to oppose certification, and eventually a trial. Additionally, Plaintiffs argue that even if they were successful on the merits of their claim, Defendants dispute the amount that would be due to them, so the amount of their

5

recovery is uncertain. The Settlement Agreement eliminates these burdens, and thus, weighs in favor of approval.

3. *Stage of Proceedings*

The third factor is intended to ensure Plaintiffs have had access to the information needed to adequately assess their case and the desirability of the Settlement Agreement. *See Kritzer*, 2012 WL 1945144, at *7. This case has been pending for more than two years, and the parties represent they have engaged in extensive discovery. Because Plaintiffs have had available to them all the information needed to make an informed decision about the settlement, this factor weighs in favor of approval.

4. *Judgment of Experienced Counsel*

By agreeing to this settlement, counsel for both parties have indicated their shared belief that the Settlement Agreement is fair, reasonable, and adequate. The Court gives great weight to the beliefs of experienced counsel. *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) (Generally, "[t]he court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."). Accordingly, this factor weighs in favor of approval.

5. *Nature of Negotiations*

Before approving an FLSA settlement, the Court must be convinced that the parties' Settlement Agreement "is non-collusive and the product of arms-length negotiations." *Kritzer*, 2012 WL 1945144, at *7. Here, the Settlement Agreement is a product of private mediation. Indeed, the parties prepared mediation memoranda and spent a full day negotiating a settlement with independent mediator Michael Russell. Given these representations, the Court is satisfied that the Settlement Agreement is a product of arms-length negotiations.

6. *Objections by Class Members*

In evaluating an FLSA settlement agreement the Court is required to consider objections, if any, raised by class members. The parties do not identify any objections in this case.

### 7. *Public Interest*

The final factor the Court must consider is whether the public interest would be served by settlement. Because the parties' Settlement Agreement would end potentially long and protracted litigation, the Court finds that this factor weighs in favor of approval. *Kritzer,* 2012 WL 1945144, at *8 ("While this case is not of general public interest, the public interest in favoring settlement certainly applies here, as the proposed settlement ends potentially long and protracted litigation.").

In sum, each of the seven fairness factors weigh in favor of approving the parties' Settlement Agreement.

### C. Whether the Attorneys' Fees and Costs Award is Reasonable

The Sixth Circuit has held that an award of attorneys' fees must be reasonable, meaning it must be "one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999).

There are two methods for determining whether proposed attorney's fees are appropriate: the lodestar and the percentage-of-the-fund. *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011). When using the percentage-of-the-fund method, courts in this Circuit generally approve of awards that are 1/3 of the total settlement. *See, e.g.*, *Rotuna v. W. Customer Mgt. Group, LLC*, 4:09CV1608, 2010 WL 2490989, at *8 (N.D. Ohio June 15, 2010) (approving of attorney's fees in the amount of 1/3 of the settlement fund). The lodestar figure represents the number of hours spent multiplied by reasonable rates. *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). A district court has discretion to select which method is appropriate given the "unique characteristics of class actions in general, and of the unique circumstances of the actual

cases before them." *Id*. Although not mandatory, courts frequently cross-check counsel's request for percentage-of-the-fund awards against the lodestar. *Id*. at 501. Courts also frequently consider several factors in determining if attorney's fees are reasonable including:

> (1) the value of the benefit rendered to the class, (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, (3) whether the services were undertaken on a contingent fee basis, (4) the value of the services on an hourly basis, (5) the complexity of the litigation, and (6) the professional skill and standing of counsel involved on both sides.

*Michel v. WM Healthcare Sols., Inc.*, No. 1:10-CV-638, 2014 WL 497031, at *15 (S.D. Ohio Feb. 7, 2014). The party seeking attorneys' fees bears the burden of documenting his entitlement to the award. *Id.* at 472.

Here, the settlement fund is $435,000, from which the amount remaining after a payment fees, costs, and any service award. Plaintiffs' Counsel report a total lodestar fee of $259,155. Plaintiffs' counsel further notes that they could have requested fees and costs of $180,000, which would have resulted in fees being approximately 40.5%. Instead, counsel for Plaintiffs request that this Court use the percentage method and award them 40% of the settlement fund, which is lower than the Class Counsels' lodestar. Forty percent of the settlement fund is $174,000.

This Court appreciates counsel's identification of the lodestar method. This Court finds that the balance of the below factors weighs in favor of finding percentage-of-the-fund amount reasonable.

1. *Value of Benefits Rendered*

Under this Settlement, all Plaintiffs receive payments representing a substantial recovery on their alleged off-the-clock work claims. Instead of the risks of continued litigation, as detailed above, the Settlement Class will receive approximately 68% of their maximum available back pay, which is well above the average recovery in FLSA lawsuits. For example, in *Dillworth*, 2010 WL 776933, at *8, the court concluded that a recovery of one-third of the owed wages for class

8

members, before deducting attorney's fees and costs, is "well above" average. Similarly, in *Rotuna*, 2010 WL 2490989 at *8 the court explained that a recovery of 75% to 25% of claimed wages as "exceptional." Measured against that standard, the Settlement presents a beneficial result for the Plaintiffs.

### 2. Societal Stake in Attorneys' Fees

The second factor, society's stake in rewarding attorneys who produce such benefits, also favors the proposed fees award. This is because "[s]ociety has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own." *See id.* at *16. Here, counsel was integral in helping Plaintiffs recover damages for unpaid wages.

### 3. Whether Services were Undertaken on Contingent Fee Basis

Given that counsel took this case on a contingency fee basis, they "undertook the risk of not being compensated, a factor that cuts significantly in favor of awarding them a significant recovery here." *See id.* As such, this third factor favors the proposed fees award.

### 4. Value of Services on Hourly Basis

As to the value of the services rendered on an hourly basis, this factor weighs in favor of the proposed fees award. In this complex class action settlement, which resolves the claims of hundreds of employees, Plaintiffs' Counsel's lodestar is likely to increase substantially in the future. Plaintiffs' Counsel will spend time fulfilling their obligations in the Settlement Agreement, administering the Settlement, and responding to Plaintiffs' and Class Member inquiries. Here, Plaintiffs' Counsel's total lodestar fees are $259,155 (Silvers Decl. ¶ 35; Fradin Decl. ¶ 10). Nothing indicates that these hourly rates are unreasonable.

### 5. Complexity of Litigation

With respect to the complexity of the litigation, this case has been pending for over two years and has involved extensive discovery, motion practice, and mediation. Furthermore, the claims and defenses in this suit have been and continue to be contested. Thus, this factor weighs in favor of the proposed fee award.

### 6. Skill of Counsel

The final factor, the professional skill and standing of the attorneys involved, also weighs in favor of the proposed fees award. Counsel has detailed the efforts that went into litigating and settling this case, as well as the reputation of the law firms involved. Accordingly, the Court finds that the proposed attorneys' fees and costs award is reasonable.

**D. Whether the Representative Plaintiff's Service Payment Award is Reasonable**

In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997). Furthermore, Courts have established that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *Dun & Bradstreet*, 130 F.R.D. at 374 (citing *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 710 (E.D. Mich. 1985)); s*ee also Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (stating the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

The Settlement contemplates providing a $7,500 service award to the Plaintiffs Rodriguez and Giesman and $2,500 service awards to the opt-in Plaintiffs Tyler Everett and Joseph Rosales.

10

The representative Plaintiffs have contributed significant time and effort to this case. Accordingly, the Court finds that the Representative Plaintiffs' time and efforts support the requested service payments.

## IV. CONCLUSION

For the reasons stated herein, the Court **GRANTS** the Joint Motion for Settlement Approval. (ECF No. 44). It further **APPROVES** Simpluris, Inc. as the Settlement Administrator. (*Id.*).

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　　　　　
**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**

**DATE: May 17, 2021**